(260 P.3d 1210)
No. 105,040

DANNY MANGUS, *Appellee*, v. HARL G. STUMP, M.D. and VICTOR M. EDDY, M.D., *Appellants*.

Opinion filed June 3, 2011.

*Michael R. O'Neil* and *Shannon L. Holmberg*, of Gilliland & Hayes, P.A., of Hutchinson, for appellants.

*Debra Egli James*, of Hampton & Royce, L.C., of Salina, for appellee.

Before MALONE, P.J., PIERRON and ARNOLD-BURGER, JJ.

MALONE, J: This is an interlocutory appeal filed by Harl G. Stump, M.D., and Victor M. Eddy, M.D., challenging the district court's decision to apply the unique circumstances doctrine to prevent a cause of action filed by Danny Mangus from being barred by the statute of limitations. Although we recognize that the unique circumstances doctrine is one of specific and limited application, we affirm the district court's utilization of the doctrine under the facts of this case.

On May 29, 2008, Mangus filed a petition against Stump and Eddy (defendants) alleging medical negligence. The petition claimed the defendants negligently performed a laparoscopic cholecystectomy on Mangus on or about June 2, 2006. On April 27, 2009, Mangus' petition was voluntarily dismissed without prejudice. Mangus refiled his petition on October 23, 2009, pursuant to K.S.A. 60-518.

On January 19, 2010, Mangus filed a motion for extension of time to serve process upon defendants under K.S.A. 60-203. In an effort to show good cause for a 30-day extension of time to serve the defendants, Mangus alleged the following: (1) His attorney's daughter faced serious medical issues from mid-September 2009 to late December 2009; (2) his attorney was involved in the trial of two separate cases in December 2009; (3) his attorney's legal assistant took a 5-week leave of absence to take care of a sick relative in October 2009; and (4) his attorney's law firm experienced a computer server crash that resulted in a substantial loss of data in November 2009.

On January 20, 2010, the district court issued an ex parte order granting Mangus an additional 30 days to serve the defendants. The order indicated the extension of time was granted by the district court after "reviewing [Mangus'] Motion, and being fully advised in the premises." Thereafter, summons was served upon Stump on February 10, 2010, and upon Eddy on February 12, 2010, within the 30-day extension of time.

On March 9, 2010, the defendants filed a motion to dismiss pursuant to K.S.A. 60-212(b)(6) due to the expiration of the statute of limitations. In their motion to dismiss, the defendants argued that Mangus failed to establish good cause for an extension of time to serve process because he did not attempt to serve the defendants prior to requesting the extension of time. Thus, the defendants contended that the order allowing Mangus an additional 30 days to serve process was improperly granted. As a result, the defendants asserted that Mangus' cause of action was not timely commenced and was barred by the applicable statute of limitations.

In his response to the motion to dismiss, Mangus conceded the fact that he did not attempt to serve the defendants prior to requesting the extension of time. However, Mangus argued that a finding of good cause to obtain an extension of time was not contingent upon Mangus having made an attempt to serve process on the defendants. Mangus also asserted that the unique circumstances doctrine should be applied to save his cause of action should the district court reverse its good-cause finding because he had relied in good faith on the district court's order.

On April 15, 2010, the district court held a hearing on the motion to dismiss. On June 21, 2010, the district court issued a memorandum decision. The district court determined that an attempt to serve process prior to requesting an extension of time is not a *sine qua non* of good cause, but it is one crucial factor to consider. The district court revisited the good-cause issue, and after hearing full argument from each side, the district court found "that good cause did not, in fact, exist at the time the Court signed the Order of Extension."

The district court next considered Mangus' request to apply the unique circumstances doctrine to prevent his cause of action from

being barred by the statute of limitations. The district court noted that when it issued the order extending time, Mangus' attorney still had 2 days to effect service on the defendants. The district court found there was substantial reason to believe that Mangus' attorney could have obtained service of process on the defendants before the initial deadline expired, but "she was deprived of that opportunity by relying on the Court's order." The district court also found that "resolution of the good cause issue in this case [was] not so obvious that [Mangus'] counsel should have disregarded the Court's order." The district court concluded:

"What was [Mangus'] counsel to do here? She had informed the Court in detail, in writing, of the matters she relied upon for good cause. There was no dishonesty or negligent misrepresentation. The Court made an independent, fully informed (given that the court had access to its file) decision concerning her Motion. That the Court was incorrect, in hindsight, in doing so deprived [Mangus] of two days in which to attempt service. The Court finds that, given what she offered the court in support of good cause, [Mangus'] counsel was justified in relying upon the Court's Order.

"The Court further finds that application of the unique circumstances doctrine serves the interest of justice, in that failure to apply it here would deprive [Mangus] of his cause of action, due in large part to the Court reversing its initial ruling by reasons not strictly caused by [Mangus] or his counsel. Finally, the circumstances here are, indeed, unique.

"Therefore, the Court finds the unique circumstances doctrine should be applied here to allow her service of process upon the defendants to have the effect of commencing [Mangus'] cause of action within the period of limitation."

The district court subsequently made the necessary findings under K.S.A. 2010 Supp. 60-2102(c) to allow the defendants to seek an interlocutory appeal. The defendants filed a timely application for an interlocutory appeal, which this court granted.

On appeal, the defendants argue that the district court erred by applying the unique circumstances doctrine to prevent Mangus' cause of action from being barred by the statute of limitations. Mangus responds by first arguing there is no requirement for a plaintiff to attempt to serve process prior to requesting an extension of time under K.S.A. 60-203(a); thus, the district court erred when it set aside its order extending time for service of process. However, Mangus did not cross-appeal this adverse ruling by the

district court, so the issue of whether the district court erred when it set aside the order extending time for service of process has not properly been raised on appeal. See K.S.A. 2010 Supp. 60-2103(h). In the alternative, Mangus argues that the district court properly applied the unique circumstances doctrine in order to prevent his cause of action from being barred by the applicable statute of limitations.

A district court's decision on a motion to dismiss is subject to a de novo standard of review. *Wachter Management Co. v. Dexter & Chaney, Inc.*, 282 Kan. 365, 368, 144 P.3d 747 (2006). Further, the defendants' arguments on appeal involve the interpretation of statutory language. Interpretation of a statute is a question of law over which an appellate court has unlimited review. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009). Finally, this court must determine whether the unique circumstances doctrine should be applied. The Kansas Supreme Court has held that the unique circumstances doctrine is one of specific and limited application, and whether it applies is a question of law subject to de novo review. *Finley v. Estate of DeGrazio*, 285 Kan. 202, Syl. ¶ 1, 170 P.3d 407 (2007); *In re Tax Appeal of Sumner County*, 261 Kan. 307, 316, 930 P.2d 1385 (1997).

A brief review of Kansas rules of civil procedure and limitations of action will help establish the framework for this appeal. K.S.A. 60-203, which governs the commencement of a civil action, provides in part as follows:

"(a) A civil action is commenced at the time of: (1) Filing a petition with the clerk of the court, if service of process is obtained or first publication is made for service by publication within 90 days after the petition is filed, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff; or (2) service of process or first publication, if service of process or first publication is not made within the time specified by provision (1)."

In 2010, the legislature made some minor clerical changes which did not affect the substance of the statute. In any event, the 2010 amendments did not go into effect until after the district court's ruling in this case. Under K.S.A. 60-203(a)(1) a civil action is commenced upon filing a petition if service of process is obtained within 90 days after the petition is filed, except the court may

extend that time an additional 30 days upon a showing of good cause. Assuming the process is served within the time parameters of the statute, the civil action is deemed commenced and relates back to the date the petition is filed. If service of process is not made within the time specified by the statute, the civil action is deemed commenced when service of process is completed. K.S.A. 60-203(a)(2).

Pursuant to K.S.A. 60-513(a)(7), a cause of action alleging medical negligence must be commenced within 2 years of the date of injury or the time the injury is reasonably ascertainable in order to satisfy the statute of limitations. Mangus alleges the defendants negligently performed a surgical procedure on June 2, 2006, and the parties agree the applicable statute of limitations expired on June 2, 2008. Mangus originally filed his petition on May 29, 2008, and his original lawsuit was timely commenced against both defendants.

Pursuant to K.S.A. 60-518, if any action is commenced before the applicable statute of limitations has expired, the plaintiff may dismiss the cause of action without prejudice for any reason other than upon the merits and the plaintiff may commence a new action within 6 months. Here, Mangus dismissed his original petition without prejudice on April 27, 2009. He refiled his petition on October 23, 2009, within the 6-month deadline provided in K.S.A. 60-518. Although Mangus met the deadline for refiling his petition, he still needed to obtain service of process on the defendants within the time parameters of K.S.A. 60-203(a) in order for his civil action to be commenced within the applicable statute of limitations. In Mangus' case, he needed to properly serve the defendants by January 21, 2010, unless this deadline was extended for an additional 30 days upon a showing of good cause, in order for his lawsuit to be commenced within the applicable statute of limitations.

As we have already stated, Mangus filed an application for a 30-day extension of time on January 19, 2010, and the district court granted the application the following day for good cause shown. Thereafter, summons was served upon Stump on February 10, 2010, and upon Eddy on February 12, 2010, within the 30-day extension of time. The district court later reversed its good-cause

finding and set aside the order for extension of time. This ruling was critical to the statute of limitations issue. If Mangus properly obtained a 30-day extension of time for service of process, his cause of action relates back to the date the petition was refiled on October 23, 2009. This date is within the statute of limitations under the savings statute. See K.S.A. 60-515. If Mangus did not properly obtain a 30-day extension of time for service of process, as the district court ultimately ruled, his cause of action is deemed commenced when service of process was completed in February 2010. See K.S.A. 60-203(a)(2). But unfortunately for Mangus, this date is beyond the applicable statute of limitations.

The parties devote a good portion of their respective briefs arguing whether the district court erred in ultimately ruling that Mangus did not show good cause to obtain an extension of time to serve process. As we previously indicated, Mangus did not cross-appeal the district court's adverse ruling on this issue. Therefore, we lack appellate jurisdiction to decide whether the district court erred when it reversed its ruling on the good-cause issue. See K.S.A. 2010 Supp. 60-2103(h).

This brings us to whether the unique circumstances doctrine is applicable, in the appropriate situation, to prevent a cause of action from being barred by the statute of limitations. The United States Supreme Court developed the unique circumstances doctrine in *Harris Truck Lines v. Cherry Meat Packers*, 371 U.S. 215, 83 S. Ct. 283, 9 L. Ed. 2d 261 (1962), *overruled by Bowles v. Russell*, 551 U.S. 205, 213-15, 127 S. Ct. 2360, 168 L. Ed. 2d 96 (2007). In *Harris*, the Supreme Court concluded that because the petitioner relied on the trial court's erroneous finding that Rule 73(a) of the Federal Rules of Civil Procedure allowed for an extension of time to file a notice of appeal, the petitioner's appeal should not be dismissed. 371 U.S. at 217. The Supreme Court applied the doctrine in a similar fashion in *Thompson v. I.N.S.*, 375 U.S. 384, 84 S. Ct. 397, 11 L. Ed. 2d 404 (1964), *overruled by Bowles*, 551 U.S. 205. The Court again focused on the fact that the appellant relied on the district court's action, which purportedly tolled or extended the time period for filing a notice of appeal. 375 U.S. at 387.

The Kansas Supreme Court first embraced the unique circumstances doctrine in *Schroeder v. Urban*, 242 Kan. 710, 750 P.2d 405 (1988). In *Schroeder*, the doctrine was applied to permit an untimely appeal in which the delayed filing resulted from (1) the appellant's good-faith and reasonable belief that the judicial action seemingly extending the time for filing was valid; (2) the perceived extension was for no more than 30 days and was made and entered prior to the expiration of the official appeal period; and (3) the appellant filed the appeal within the extension. 242 Kan. at 713-14.

The Kansas Supreme Court reached a similar result and applied the unique circumstances doctrine to save an untimely appeal in *Johnson v. American Cyanamid Co.*, 243 Kan. 291, 301, 758 P.2d 206 (1988). The court expanded the doctrine to include situations involving untimely service of process in *Slayden v. Sixta*, 250 Kan. 23, 29-31, 825 P.2d 119 (1992). In *In re Tax Appeal of Sumner County*, 261 Kan. 307, 316, 930 P.2d 1385 (1997), the doctrine was applied to excuse an untimely petition for reconsideration where the Board of Tax Appeals made an erroneous statement regarding the filing period. In *Nguyen v. IBP, Inc.*, 266 Kan. 580, 587, 972 P.2d 747 (1999), the court found that the doctrine could be applicable where a filing delay is the direct result of an error made in an administrative law judge's office.

However, the United States Supreme Court substantially narrowed the application of the unique circumstances doctrine in *Bowles*. In that case, the petitioner moved to reopen the filing period for habeas corpus relief pursuant to Federal Rule of Appellate Procedure 4(a)(6), which allows a district court to grant a 14-day extension under certain conditions. The district court granted the petitioner's motion but inexplicably gave him 17 days to file his notice of appeal. The petitioner filed his notice within the 17 days allowed by the district court, but after the 14-day period allowed by Rule 4(a)(6). The Sixth Circuit Court of Appeals held that the notice was untimely and that the court lacked jurisdiction to hear the case. The United States Supreme Court affirmed and refused to apply the unique circumstances doctrine to save the petitioner's appeal. The Supreme Court held: "Because this Court

has no authority to create equitable exceptions to jurisdictional requirements, use of the 'unique circumstances' doctrine is illegitimate." 551 U.S. at 214.

Following the United States Supreme Court's decision in *Bowles*, the Kansas Supreme Court addressed the unique circumstances doctrine in *Finley*, 285 Kan. at 207-13. In *Finley*, the plaintiff filed a medical negligence action against multiple defendants. The plaintiff requested a 30-day extension of time to serve process against the defendants by faxing a proposed order to the district court. A district judge signed the order, and the plaintiff served all the defendants within the 30-day extension of time. The defendants subsequently filed a motion to dismiss, arguing that the plaintiff failed to establish "good cause" for the extension of time and, as such, they were not properly served before the expiration of the statute of limitations. The defendants specifically challenged paragraph 3 of the extension order, which stated: " 'Plaintiff has through due diligence attempted service upon this Defendant but her efforts have not been successful.' " 285 Kan. at 204.

At a hearing before a different judge, the plaintiff's counsel admitted that she had made no effort to serve the defendants prior to requesting the extension of time. She then attempted to show "good cause" based upon facts that were not submitted to the district court at the time she requested the extension. The district court determined that the order was invalid because the plaintiff did not establish good cause at the time she initially requested the extension of time. The district court further determined that the unique circumstances doctrine did not apply to the facts of the case. The district judge emphasized the fact that the plaintiff's counsel had included an untrue finding in the proposed order: " 'I will not go so far as to accuse plaintiff's counsel of purposely misleading [the judge], but I feel it borders on a reckless disregard for the true facts of this case.' " 285 Kan. at 205. Accordingly, the district court concluded that the plaintiff's claims were barred by the applicable 2-year statute of limitations, and the district court granted the defendants' motion to dismiss.

On appeal, the Kansas Supreme Court ruled that the doctrine of unique circumstances did not apply under the facts of the case.

The court explained that the application of the unique circumstances doctrine "depends upon such concepts as equity, the interests of justice, good faith, estoppel, or nonparty error." 285 Kan. at 209. The court held: "We conclude that [plaintiff's] counsel's untrue representations to the court, which it clearly relied upon in signing the order as presented because it had no other information from [plaintiff], are what prevent application of the doctrine of unique circumstances." 285 Kan. at 209. The court briefly discussed the *Bowles* decision in its opinion, solely to support the proposition that the unique circumstances doctrine is an equitable exception. 285 Kan. at 210.

The *Finley* decision has created a great deal of uncertainty regarding the continued viability of the unique circumstances doctrine in Kansas. Several panels of this court have discussed the Kansas Supreme Court's "surprising" decision to consider the doctrine in *Finley* without discussing the impact of *Bowles*. See, *e.g.*, *Board of Sedgwick County Comm'rs v. City of Park City*, 41 Kan. App. 2d 646, 658, 204 P.3d 648 (2009), *aff'd* 293 Kan. 107, 260 P.3d 387 (2011). ("Despite its explicit recognition of *Bowles'* holding, the *Finley* court, surprisingly, proceeded to consider the application of the unique circumstances doctrine."); *Rowland v. Barb*, 40 Kan. App. 2d 493, 501, 193 P.3d 499 (2008) ("It appears the *Finley* court interpreted *Bowles* to permit application of the unique circumstances doctrine *only* if equitable exceptions justify its application—when in fact, *Bowles* ruled that courts have *no* authority to apply the doctrine 'to create equitable exceptions to jurisdictional requirements.' [Citation omitted.]"); *Le v. Joslin*, 41 Kan. App. 2d 280, 288, 202 P.3d 677 (2009) ("Here, even if the unique circumstances doctrine is still viable, no equitable exceptions justify its application.").

In *Board of Sedgwick County Comm'rs*, this court refused to apply the unique circumstances doctrine to extend the appeal period for a party which erroneously relied upon a trial court's unauthorized extension of the 10-day period for filing a posttrial motion under K.S.A. 60-259(f). 41 Kan. App. 2d at 660. The Kansas Supreme Court has granted a petition for review and presumably will shed more light on the application of the unique circumstances

doctrine in Kansas when that case is eventually decided. For now, we must decide whether the unique circumstances doctrine can be applied, in the appropriate situation, to prevent a cause of action from being barred by the statute of limitations. We conclude the doctrine can be so applied for the following reasons.

In *Bowles*, the United States Supreme Court held that the unique circumstances doctrine cannot be applied to confer jurisdiction upon a court where jurisdiction otherwise does not exist. 551 U.S. at 214. In other words, the *Bowles* Court overturned the use of the doctrine to circumvent jurisdictional requirements, no matter how unfair or unjust the result may be. The Court chose an overly broad term when it declared that the unique circumstances doctrine was "illegitimate." 551 U.S. at 214. Although the *Bowles* Court substantially narrowed the application of the unique circumstances doctrine, the Court did not eliminate the doctrine from any possible use.

Following *Bowles,* the Kansas Supreme Court addressed the unique circumstances doctrine in *Finley* and determined that the doctrine is an equitable exception that applies to nonparty error. 285 Kan. at 209. The fact that the court considered the unique circumstances doctrine at all in *Finley* is a clear signal that the doctrine is not dead in Kansas. In *Finley*, the court emphasized that counsel's untrue representations to the court in securing the 30-day extension of time for service of process prevented application of the unique circumstances doctrine *under the facts of that case*. 285 Kan. at 209.

This court must follow the United States Supreme Court's holding in *Bowles* that the unique circumstances doctrine cannot be applied to circumvent jurisdictional requirements. But that is not how the doctrine is being applied here. The district court did not apply the unique circumstances doctrine to confer either personal or subject matter jurisdiction on the court. Instead, the district court applied the doctrine under the unusual facts of this case to prevent Mangus' cause of action from being barred by the statute of limitations.

A district court obtains personal jurisdiction over a defendant only when a lawsuit is properly commenced. *Pieren-Abbott v. Kan-*

*sas Dept. of Revenue*, 279 Kan. 83, 92-93, 106 P.3d 492 (2005). Here, the district court obtained personal jurisdiction over the defendants when they were ultimately served with process in February 2010. See K.S.A. 60-203(a)(2). The only problem is that by that date, Mangus' cause of action was barred by the statute of limitations. The district court applied the unique circumstances doctrine to avoid the statute of limitations bar, but the district court did not apply the doctrine to confer personal jurisdiction over the defendants when personal jurisdiction otherwise did not exist.

Likewise, the district court did not apply the unique circumstances doctrine to confer subject matter jurisdiction to the court. Subject matter jurisdiction is vested by statute and establishes the court's authority to hear and decide a particular type of action. Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, and parties cannot convey subject matter jurisdiction on a court by failing to object to the court's lack of jurisdiction. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009).

Here, the district court applied the unique circumstances doctrine to prevent Mangus' cause of action from being barred by the statute of limitations. In Kansas, the statute of limitations is an affirmative defense that must be proved and pled by a defendant or else the defense is waived. K.S.A. 60-208(c); *Diversified Financial Planners, Inc. v. Maderak*, 248 Kan. 946, 948, 811 P.2d 1237 (1991); *Ternes v. Galichia*, 43 Kan. App. 2d 857, 863, 234 P.3d 820 (2009). Whether a lawsuit is filed within the applicable statute of limitations has nothing to do with the district court's subject matter jurisdiction to hear a particular type of case. In this instance, the district court certainly had subject matter jurisdiction to hear Mangus' medical negligence case, and the district court did not apply the unique circumstances doctrine to confer subject matter jurisdiction on the court where subject matter jurisdiction otherwise did not exist. Thus, the district court's application of the unique circumstances doctrine was not contrary to the United States Supreme Court's holding in *Bowles*.

Now that we have established that the unique circumstances doctrine is still viable, in the appropriate situation, to prevent a

cause of action from being barred by the statute of limitations, the question then becomes whether it was proper for the district court to apply the doctrine to the facts of this case. The Kansas Supreme Court has repeatedly stated that whether the unique circumstances doctrine applies is a question of law subject to de novo review. *Finley,* 285 Kan. at 207; *In re Tax Appeal of Sumner County*, 261 Kan. at 316. However, we suggest that appellate courts should apply a bifurcated standard of review. Whether the unique circumstances doctrine is *available* to the court as an equitable remedy in a given situation is a question of law subject to de novo review. If the unique circumstances doctrine is available as an equitable remedy, then whether the district court properly applied the doctrine to the facts of a particular case is subject to an abuse of discretion standard of review.

The facts herein are similar to the facts in *Finley* where the Kansas Supreme Court found it was inappropriate to apply the unique circumstances doctrine. However, the facts herein are distinguishable from *Finley* in one important respect. In *Finley*, the plaintiff's counsel made untrue representations to the court in order to secure the 30-day extension of time. The *Finley* court emphasized this misrepresentation in determining that it was inappropriate to apply an equitable exception to the facts of that case. 285 Kan. at 209. Here, Mangus' counsel did not misrepresent any facts to the district court in order to obtain the 30-day extension of time.

The *Finley* court stated that the unique circumstances doctrine applies to nonparty error. 285 Kan. at 209. Here, the district court found, in hindsight, that it erred by granting the 30-day extension of time. The district court also found that Mangus' counsel relied to her detriment on the court's error. The district court noted that counsel checked with the court on the morning of January 20, 2010, to make sure the order was signed. The district court specifically found that had the order not been signed, there was substantial reason to believe that Mangus' attorney could have obtained service before the initial deadline expired.

The defendants argue that a careful review of the law should have alerted Mangus that the district court lacked the authority to

grant an extension of time based upon the facts Mangus presented in his application. This is an issue we are not resolving in this appeal. However, the district court specifically found that resolution of the good-cause issue was not so obvious that Mangus' counsel should have disregarded the court's order.

It is worth noting that the plain language of K.S.A. 60-203(a) does not require an attempt by the plaintiff to serve process prior to requesting an extension of time for good cause. Mangus was aware that he needed to show good cause in order to obtain an extension of time to serve process on the defendants. His attorney set forth several reasons in an effort to show good cause for the time extension, followed up closely to make sure the order was signed, and then relied on the order to obtain additional time to serve the defendants.

This case presents a situation where Mangus relied in good faith on the district court's order extending the time for service of process, and this reliance played a substantial role in causing Mangus to miss the statute of limitations. There was no dishonesty or negligent misrepresentation by Mangus to the court. The district court carefully weighed the equities and found that application of the unique circumstances doctrine served the interests of justice. We conclude the district court properly applied the unique circumstances doctrine to the facts of this case to prevent Mangus' cause of action from being barred by the statute of limitations. Accordingly, the district court did not err in denying defendants' motion to dismiss.

Affirmed.