NOT DESIGNATED FOR PUBLICATION

No. 113,057

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROBERTO BAEZA,
*Appellant*,

v.

ALI KEMAL,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed November 13, 2015. Affirmed.

*Peter J. Antosh*, of Garcia & Antosh, LLP, of Dodge City, for appellant.

*David P. Calvert*, of David P. Calvert, P.A., of Wichita, for appellee.

Before MALONE, C.J., GREEN and POWELL, JJ.

*Per Curiam*: Roberto Baeza appeals the trial court's dismissal of his civil action against Kemal Ali with prejudice. Although this case is docketed as *Roberto Baeza v. Ali Kemal*, the appellee's name is actually Kemal Ali. On appeal, Baeza argues that this court must reverse the trial court's dismissal of his action because the trial court incorrectly determined that he failed to make a showing of good cause for a 30-day extension of time to obtain service of process under K.S.A. 2014 Supp. 60-203(a)(1). In the alternative, Baeza argues that the trial court incorrectly determined that the unique circumstances doctrine did not excuse his untimely service. As discussed below, however, neither of

1

Baeza's arguments have merit. Accordingly, we affirm the trial court's dismissal of Baeza's action with prejudice.

On May 17, 2012, Baeza, Ali, and Matthew McGuire were involved in a 3-car accident. McGuire had come to a complete stop while attempting to merge into another lane. Baeza, who was directly behind McGuire, failed to stop and drove into the back of McGuire's car. Ali, who was behind Baeza, was also unable to stop and drove into the back of Baeza's car. The front of Baeza's car was under the back of McGuire's car. Ali's car nearly came to a complete stop before barely bumping Baeza's car. Both McGuire and Ali told the investigating police officer that Baeza crashed into McGuire's car before Ali bumped into Baeza's car. Based on the positions of the cars, McGuire's statement to the police, and Ali's statement to the police, the investigating officer issued a ticket to Baeza for inattentive driving.

For an unknown reason, the investigating officer made two accident reports documenting the single accident. The first accident report, numbered 12C034245, contained information concerning the collision between Baeza and McGuire. The second accident report, numbered 12C034246, contained information concerning the collision between Baeza and Ali. Even though the investigating officer made two accident reports, both reports contained Ali's contact information, including his home address and phone number. Moreover, the accident reports referenced each other. The 12C034245 accident report stated that there was a connecting case numbered 12C034246, and the 12C034246 accident report stated that there was a connecting case numbered 12C034245.

Although it seems the accident was Baeza's fault, on May 14, 2014, Baeza filed suit against Ali for damages exceeding $75,000. In his petition, Baeza alleged that Ali negligently slammed into his car, which caused his car to collide with McGuire's car. Because of the collision, Baeza claimed that he "suffered permanent bodily injuries and economic losses." The petition further stated that Ali could be found and served with

process at his home address. The home address listed in the petition was the same home address listed in both accident reports. A summons, which also stated that Ali could be found and served with process at this same home address, was issued the same day. Nevertheless, Baeza did not immediately serve process on Ali.

Under K.S.A. 2014 Supp. 60-203(a)(1), a plaintiff has 90 days to serve process on a defendant after filing his or her petition with the court "except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff." On August 11, 2014, 89 days after Baeza filed his petition with the court, Baeza moved for a 30-day extension of time to serve process. In his motion, Baeza provided the following explanation for why he needed additional time to serve Ali with process:

> "The accident giving rise to this claim is unusual in that it involved a three car collision but it appears that two separate accident reports were generated (car 1 vs. [car] 2) (car 2 vs. [car] 3). Counsel for Plaintiff has not yet obtained the more pertinent of the accident reports, which caused him delay in proceeding with service of process. Counsel for Plaintiff respectfully states that this was his oversight, and respectfully requests that the Court permit him to rectify this error and not prejudice the Plaintiff for same."

Additionally, it seems that Baeza's attorney, Peter Antosh, and the trial judge had a telephone conversation concerning the motion. The transcript of this conversation is not included in the record on appeal. On August 12, 2014, the trial judge issued an ex parte order granting the 30-day extension of time to serve process. Baeza finally served a summons on Ali on September 11, 2014, 120 days after he filed the petition. Baeza served process on Ali at the same home address listed in the accident reports and his petition.

Ali immediately moved to dismiss Baeza's action with prejudice. In this motion, Ali asserted that the action was time-barred by the statute of limitations because the trial court had erred in granting the motion for a 30-day extension of time to serve process. Ali

3

argued that the trial court had erred because Baeza had not shown good cause for that extension under K.S.A. 2014 Supp. 60-203(a)(1). Specifically, Ali argued that Baeza failed to show good cause for the extension because he had made no efforts to serve him with a summons before the expiration of the 90-day time limit under K.S.A. 2014 Supp. 60-203(a)(1). To support this argument, Ali relied on *Le v. Joslin*, 41 Kan. App. 2d 280, 287-89, 202 P. 3d 677 (2009), which held that the trial court properly found Le failed to show good cause for an extension of time to serve process when Le was capable of serving process yet never even attempted to serve process before obtaining an extension.

The trial court set the motion for hearing on September 19, 2014. At this hearing, however, neither Baeza nor Antosh appeared. The trial court dismissed Baeza's case with prejudice, finding that it erred in granting the time extension because Baeza failed to show good cause for the extension.

Following the dismissal, Baeza moved to set aside the trial court's judgment. On November 7, 2014, the trial court held a hearing on Baeza's motion to set aside judgment. Instead of arguing the motion to set aside judgment, however, the parties agreed to set aside the trial court's dismissal with prejudice and reargue the merits of Ali's motion to dismiss with prejudice. Again, Ali asserted that dismissal of Baeza's action was proper under *Le* because Baeza was capable of serving process yet never attempted to serve process on him before asking for the 30-day extension. Baeza countered that the underlying facts in *Le* were not similar to his case; thus, the trial court should not follow *Le*. Furthermore, citing *Mangus v. Stump*, 45 Kan. App. 2d 987, 260 P.3d 1210, 2011, *rev. denied* 293 Kan. 1107 (2012), Baeza argued that even if good cause for the extension did not exist, the unique circumstances doctrine excused his untimely service. Antosh told the trial court that the unique circumstances doctrine applied because if the trial court had not granted the 30-day extension, Baeza would have been able to timely serve process on Ali. Antosh explained that he would have personally served Ali by tacking the summons on Ali's door before the statute of limitations expired.

4

In addition to those arguments, the trial court questioned Antosh about why Baeza failed to serve a summons on Ali within 90 days of filing his petition. During this questioning, Antosh admitted that Baeza had been his client in this case and in a workers compensation case since 2012. Antosh admitted that he obtained the first accident report, which references that there was a second accident report, on May 12, 2014. Antosh further admitted that he knew Ali's home address because it was listed in the first accident report, but because the first accident report did not contain Ali's driver's license number he was "hoping for an out-of-state driver's license" so he could "secure process on the Secretary of State." Ali's counsel additionally pointed out to the trial court that both accident reports were available for immediate download on the City of Wichita website.

The trial court ultimately dismissed Baeza's case with prejudice. In making this ruling, the trial judge explained that based on his understanding of *Le* and *Mangus*, a plaintiff must make some effort to serve process within 90 days of filing his or her petition. The trial judge noted that in *Mangus*, Mangus' attorney fully explained to the trial court the reasons why she needed an extension of time to serve process. Then, the trial judge stated the following:

> "My memory is, Mr. Antosh, that you had called my office discussing this and you'd indicated that you're running out of time and I think my advice was, well, if you're out of time, then you need to file a motion to extend time for service of process; which you did on August 11th, 2014.
>
> "And my memory of that conversation was that pretty much the same things that are in the motion were discussed on the phone . . . .
>
> "The point that I'm trying to make is that if you simply look at the motion that was filed and the facts that are asserted in the motion, it would appear that, . . . you've got 90 days running; you have difficulty in obtaining police reports that would—that are necessary in order to obtain service of process.
>
> "And so on the face of the motion, . . . I found good cause. And I think that if those are the facts, and that's all . . . , good cause is probably present on that motion.

5

"Having said that again, once Mr. Calvert [Ali's attorney] files a motion challenging that . . . as a result of the adversarial process, it becomes clear that . . . these accident reports—the first accident report was in your possession on May 12th, that accident report referenced the second accident report, there was really nothing preventing you from obtaining the second accident report. It just didn't happen until the end.

"And once those facts are fleshed out, it appears then that . . . you don't have good cause because there was—the real attempt to start the process of getting this defendant served occurred at the end of the 90-day period and there really wasn't any reason why that process couldn't have started earlier. Had the process started earlier, we would have had service within 90 days. . . . [T]hose facts all of a sudden change the contour of whether or not good cause exists.

"So it doesn't appear to me that there was good cause to grant the motion now that I'm aware that . . . accident reports were available; they just weren't requested until after 90 days; . . . the things that delayed the service of process were delays that were simply created by the fact that the effort to serve process was pushed off to the tail end of that 90-day period.

"And I'm not—I don't want to appear to be unduly critical to plaintiff's counsel in terms of what was represented in the motion . . . . I just think that once the motion is filed and then you have an adversarial challenge, then the question becomes was my ruling correct based on what was represented in the motion; and if the answer is no, and the complete picture was provided in the motion, then I think you have unique circumstances. Which is what we had in the [*sic*] Judge Bouker's case in the *Mangus* decision.

"If, on the other hand, we have a bare bones filing, motion's granted, then we have a challenge, and then as a result of the challenge additional facts are brought forward that change my mind, then the question is, were those facts included in the original motion; and if the answer is no, I don't believe that you have a circumstance where the unique circumstances doctrine applies because it's not completely my error if I'm not given all the information with which to completely evaluate a motion such as this.

. . . .

"So I don't believe we have good cause to extend the 90 days. I don't know that I would have reached the same decision had a more complete motion been filed. So I don't know that this is a circumstance where the unique circumstances doctrine is going to kick in to save the case.

6

"So, Mr. Calvert, your motion to dismiss will be granted."

## DID THE TRIAL COURT ERR WHEN IT DISMISSED BAEZA'S ACTION WITH PREJUDICE?

On appeal, Baeza asks this court to reverse the trial court's dismissal of his case with prejudice. First, Baeza argues that he provided the trial court with good cause for a 30-day extension of time to serve process on Ali. In the alternative, Baeza argues that even if he failed to provide the trial court with good cause for the extension, his action was not barred under the unique circumstances doctrine.

*Standard of Review*

An appellate court exercises de novo review over the trial court's decision on a motion to dismiss. *Mangus*, 45 Kan. App. 2d at 991. Additionally, Baeza's argument concerning whether he had good cause for an extension of time to serve process under K.S.A. 2014 Supp. 60-203(a)(1) requires this court to interpret statutory language. Statutory interpretation presents a question of law over which an appellate court has unlimited review. *Le*, 41 Kan. App. 2d at 284. Last, whether the unique circumstances doctrine is applicable is a question of law subject to de novo review. *Finley v. Estate of DeGrazio,* 285 Kan. 202, Syl. ¶ 1, 170 P.3d 407 (2007).

*Application of K.S.A. 2014 Supp. 60-203(a)(1)*

K.S.A. 2014 Supp. 60-203(a) states:

"A civil action is commenced at the time of: (1) Filing a petition with the court, if service of process is obtained or the first publication is made for service by publication within 90 days after the petition is filed, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff; or (2) service of

7

process or first publication, if service of process or first publication is not made within the time specified by paragraph (1)."

As a result, to timely commence a civil action, a plaintiff must serve process on the defendant within 90 days of the date that the plaintiff filed his or her petition with the court. Moreover, "[t]he showing of good cause by the plaintiff is a condition precedent to the trial court's decision of whether to grant the 30-day extension under K.S.A. 60-203(a)(1)." *Le*, 41 Kan. App. 2d at 285.

In this case, the car accident giving rise to this cause of action occurred on May 17, 2012. Under K.S.A. 60-513(a)(4), Baeza had 2 years to file an action against Ali for damages arising from the car accident. Thus, Baeza had until May 17, 2014, to file his action against Ali. Baeza ultimately filed his action against Ali on May 14, 2014, just 3 days before the statute of limitations expired. Then, Baeza failed to serve a summons on Ali within 90 days of filing his petition as stated in K.S.A. 2014 Supp. 60-203(a)(1). Instead, Baeza moved for a 30-day extension of time to serve process for good cause. The trial court granted this extension. Baeza finally served a summons on Ali on September 11, 2014, the 30th day of his 30-day extension.

Because Baeza failed to serve process on Ali before the statute of limitations expired, the question as to whether Baeza timely commenced his action depends upon if Baeza served process on Ali within the time limits stated in K.S.A. 2014 Supp. 60-203(a)(1). As a result, Baeza's action would be time-barred by the statute of limitations unless the trial court erred in ruling that he had not shown good cause for the extension or the trial court erred in ruling that the unique circumstances doctrine was inapplicable.

*The Trial Court Correctly Determined That Baeza Failed to Show Good Cause for a 30-Day Extension of Time to Serve Process on Ali.*

Baeza contends that the trial court erred when it ruled that he had not shown good cause for a 30-day extension of time to serve process on Ali under K.S.A. 2014 Supp. 60-203(a)(1). Baeza takes issue with the trial court's reliance on *Le* in reaching its determination. Baeza asserts that *Le* was "not on point and formed an insufficient basis for reversal of the extension."

In *Le*, Le filed her petition before the applicable statute of limitations had expired. Nevertheless, Le did not serve process on the defendant until after the statute of limitations had expired. Moreover, like in Baeza's case, Le requested and was granted a 30-day extension of time to serve process following the expiration of the statutory 90-day period to serve process under K.S.A. 60-203(a)(1). Le served her summons on the defendant during this 30-day extension. Later, however, the trial court determined that it had erred when it granted the extension because Le had failed to show good cause for the extension.

The *Le* court affirmed the trial court's dismissal, determining that nothing in the record on appeal supported that Le had shown good cause for the extension as required under K.S.A. 60-203(a)(1). 41 Kan. App. 2d at 285-89. The *Le* court further held that the trial court properly determined that good cause did not exist because nothing in the record indicated that something outside of Le's control was preventing her from serving process yet "Le never even attempted to serve [the defendant] before obtaining the 30-day extension under K.S.A. 60-203." 41 Kan. App. 2d at 287-88. Thus, the *Le* holding stands for the proposition that a plaintiff who is capable of obtaining service of process within 90 days of filing his or her petition, but fails to do so, cannot make a showing of good cause for a 30-day extension under K.S.A. 2014 Supp. 60-203(a)(1).

9

In this case, the trial court initially granted the 30-day extension because in Baeza's motion, Baeza had indicated that he did not have all the relevant information to serve process on Ali. During the hearing, however, the trial court became aware of facts not included in Baeza's motion. Those facts clearly proved that Baeza was capable of obtaining service of process within 90 days of filing his petition but failed to do so.

At the hearing, the trial court learned that Baeza had known Ali's home address since he obtained the first accident report 2 days before he filed his petition. The trial court further learned that both Baeza's petition and the summons, which was issued the same day as the petition, contained Ali's home address. The trial court also learned that even if the second accident report contained important information, it was available for immediate download on the City of Wichita website. Most importantly, while arguing that the unique circumstances doctrine applied, Antosh told the trial court that Baeza would have been able to timely serve process on Ali within 90 days of filing his petition but for the trial court's order granting the 30-day extension of time to serve process. Antosh asserted that if the trial court had denied the motion, he would have personally served Ali by tacking a summons on Ali's home door on August 12, 2014, the 90th day after Baeza filed his petition. By making this statement, Antosh admitted to the trial court that Baeza did not need the extension to obtain timely service of process.

Thus, although Baeza asserts that the trial court incorrectly relied on *Le* because it was "not on point," a review of the facts in Baeza's case clearly shows that *Le* was on point. Again, the *Le* court held that good cause for a 30-day extension of time to serve process under K.S.A. 60-203(a)(1) cannot exist when nothing is preventing a plaintiff from serving process yet that plaintiff fails to even attempt to serve process before obtaining an extension. 41 Kan. App. 2d at 288. Here, there is ample evidence to support that Baeza was capable of serving process on Ali within 90 days of filing his petition but failed to do so before obtaining the extension. Accordingly, the trial court did not err

when it relied on *Le* to rule that Baeza had failed to show good cause for the 30-day extension under K.S.A. 2014 Supp. 60-203(a)(1).

It is also important to note that Baeza's remaining criticisms of *Le* are unfounded. First, Baeza takes issue with the fact that the *Le* court cited *Fidelity Sav. Ass'n of Kansas v. Ricker,* 141 F.R.D. 324, 326 (D. Kan. 1992), a case where the federal district court examined what constitutes "good cause" under K.S.A. 60-203(a)(1). Baeza points out that the Kansas rules of civil procedure and the federal rules of civil procedure are very different. Nevertheless, both K.S.A. 2014 Supp. 60-203(a)(1) and Fed. R. Civ. Proc. 4(m) require a showing of good cause for an extension of time to serve process. Although *Fidelity* is a federal case, the *Fidelity* court examined good cause for an extension under K.S.A. 60-203(a)(1), not Fed. R. Civ. Proc. 4, because the case had originally been filed in state court before being removed to federal district court. 141 F.R.D. at 325–26. Moreover, as the *Fidelity* court noted in 1992, no Kansas caselaw defining "good cause" under K.S.A. 60-203(a)(1) existed. 141 F.R.D. at 325. "While federal cases do not override established Kansas law, they may be persuasive authority." *Lewis v. Kansas Production Co.*, 40 Kan. App. 2d 1123, 1131, 199 P.3d 180 (2009). Given that the *Fidelity* court examined K.S.A. 60-203(a)(1) and Kansas caselaw defining good cause was lacking, *Fidelity* was highly persuasive authority.

Second, Baeza argues that the *Le* holding regarding good cause is incorrect because the plain language of K.S.A. 2014 Supp. 60-203(a)(1) does not require that a plaintiff attempt to serve process before requesting an extension of time for good cause. Baeza correctly asserts that the plain language of K.S.A. 2014 Supp. 60-203(a)(1) does not include such a requirement. Nonetheless, if the facts of the case prove that nothing is preventing a plaintiff from serving a defendant with a summons within 90 days of filing his or her petition, yet that plaintiff fails to take any action, how could good cause for an extension exist? The legislature included the "good cause" language in K.S.A. 2014 Supp. 60-203(a)(1) for a reason. The legislature intended that a trial court grant a 30-day

11

extension of time to serve process only when the plaintiff has provided the court with a legitimate reason why it was unable to serve process within the 90-day time limit of K.S.A. 2014 Supp. 60-203(a)(1). If this court were to find that Baeza had shown good cause for an extension even though he took no actions to attempt to serve process before obtaining the extension, this court would render the good cause language in K.S.A. 2014 Supp. 60-203(a)(1) meaningless. Thus, Baeza's criticism is baseless.

Finally, even if this court determined that the trial court's reliance on *Le* was improper, Baeza's good cause argument would still fail under our Supreme Court's holdings in *Finley*. When the trial court reaches the correct result, the trial court's finding will be upheld even though it relied upon the wrong ground for its finding. *Hockett v. The Trees Oil Co.*, 292 Kan. 213, 218, 251 P.3d 65 (2011).

In *Finley*, our Supreme Court made two holdings which control the outcome of Baeza's good cause argument. First, our Supreme Court held that "providing good cause at the time of the requested extension requires that the represented facts—which purportedly constitute good cause—be grounded in the truth." *Finley*, 285 Kan. at 209. Regarding what constituted "the truth," our Supreme Court stated:

> "Misrepresentation need not be intentional. For example, fraudulent misrepresentation requires proof that the defendant knew the statement was untrue or was reckless as to the truth or falsity, while negligent misrepresentation only requires proof that the defendant failed to exercise reasonable care or competence to obtain or communicate true information." *Finley*, 285 Kan. at 212 (citing *Gerhardt v. Harris,* 261 Kan. 1007, 1018, 934 P.2d 976 [1997]).

Here, Baeza's motion for a 30-day extension to serve process was not grounded in the truth. For example, Baeza's motion stated:

12

"The accident giving rise to this claim is unusual in that it involved a three car collision but it appears that two separate accident reports were generated (car 1 vs. [car] 2) (car 2 vs. [car] 3). Counsel for Plaintiff has not yet obtained the more pertinent of the accident reports, which caused him delay in proceeding with service of process. Counsel for Plaintiff respectfully states that this was his oversight, and respectfully requests that the Court permit him to rectify this error and not prejudice the Plaintiff for same."

Although Antosh states that the failure to obtain the second accident report was his oversight, this statement fails to inform the trial court that Baeza already knew Ali's home address from the first accident report. Instead, the statement implies that Baeza cannot serve process until he gets the second accident report. The statement about the more pertinent accident report also implies that Baeza had been making efforts to obtain the second accident report. Certainly, Baeza's motion fails to inform the trial court that the second accident report was available for immediate download on the City of Wichita website. Furthermore, the trial judge clearly felt that Baeza's motion failed to inform him of the whole truth, as the trial judge stated that there was obviously no good cause for the extension "once [the] facts [were] fleshed out."

At the very least, Baeza "failed to exercise reasonable care or competence to obtain or communicate true information" to the trial court in his motion. See *Finley*, 285 Kan. at 212. Given our Supreme Court's holding in *Finley* that good cause for an extension cannot exist unless the facts represented to the trial court are grounded in the truth, Baeza cannot successfully argue that the trial court erred in determining that he had failed to show good cause for an extension on appeal.

Second, in *Finley*, our Supreme Court also held that "a mistake of counsel or ignorance of the rules usually does not constitute good cause for failure of timely service." 285 Kan. at 209 (citing *In re Kirkland,* 86 F.3d 172, 175 [10th Cir. 1996]). In Baeza's motion and at the hearing, Antosh stated that Baeza's failure to obtain the second accident report was his fault. Although Antosh continued to assert that obtaining the

13

second accident report was somehow necessary before service could occur, Antosh nevertheless admitted that the failure to timely serve Ali was his mistake. Consequently, under *Finley*, Antosh's mistakes cannot constitute good cause.

In summary, Baeza was capable of timely serving process on Ali yet failed to do so. Despite having Ali's home address, Baeza asked for a 30-day extension of time to serve process before he ever even attempted to serve process on Ali. Under this court's holding in *Le*, the trial court correctly ruled that Baeza had failed to show good cause for an extension. Furthermore, assuming arguendo that the trial court's reliance on *Le* was improper, Baeza's good cause arguments would still fail given our Supreme Court's holdings in *Finley*. As a result, we affirm the trial court's determination that good cause for Baeza's 30-day extension of time to serve process did not exist.

*The Trial Court Correctly Ruled That the Unique Circumstances Doctrine Did Not Excuse Baeza's Untimely Service of Process.*

Next, Baeza argues that even if he failed to show good cause for the 30-day extension of time to serve process under K.S.A. 2014 Supp. 60-203(a)(1), his untimely service of process was excused by the unique circumstances doctrine. The unique circumstances doctrine is applicable in very limited and specific situations. *Finley*, 285 Kan. at 207. When the unique circumstances doctrine is applicable, it prevents a plaintiff's action from being barred by the statute of limitations even though the plaintiff did not timely serve process. In *Finley*, our Supreme Court determined that the unique circumstances doctrine "depends upon such concepts as equity, the interests of justice, good faith, estoppel, or nonparty error." 285 Kan. at 209.

Baeza contends that this court should reverse the trial court's ruling that the unique circumstances doctrine did not excuse his untimely service of process. Baeza argues that his "case almost perfectly parallels *Mangus v. Stump*," where this court affirmed the trial

14

court's ruling that the unique circumstances doctrine excused Mangus' untimely service of process. 45 Kan. App. 2d 287, Syl. ¶ 7. Despite Baeza's contention, his case stands in stark contrast to *Mangus*.

In *Mangus*, this court compared the facts of Mangus' case to the facts in *Finley*. 45 Kan. App. 2d at 999. Regarding this comparison, the *Mangus* court stated the following:

> "The facts herein are similar to the facts in *Finley* where the Kansas Supreme Court found it was inappropriate to apply the unique circumstances doctrine. However, the facts herein are distinguishable from *Finley* in one important respect. In *Finley,* the plaintiff's counsel made untrue representations to the court in order to secure the 30-day extension of time. The *Finley* court emphasized this misrepresentation in determining that it was inappropriate to apply an equitable exception to the facts of that case. 285 Kan. at 209. Here, Mangus' counsel did not misrepresent any facts to the district court in order to obtain the 30-day extension of time." 45 Kan. App. 2d at 999.

Thus, the *Mangus* court distinguished the facts of Mangus' case from *Finley* because Mangus had been upfront with the trial court, not misrepresenting any facts to obtain the extension. The *Mangus* court affirmed the trial court's ruling that the unique circumstances doctrine was applicable based on this distinction. 45 Kan. App. 2d at 1000.

Baeza, however, obtained the 30-day extension of time to serve process based upon facts not wholly grounded in the truth. As previously discussed, Baeza failed to include pertinent information in his motion. Because Baeza excluded this information in his motion, the trial judge was unable to make a fully informed decision on the motion. Moreover, in dismissing Baeza's action, the trial judge specifically noted that Baeza failed to include relevant information in his motion that prevented the judge from making an informed ruling on the motion. Consequently, the underlying facts of Baeza's case are not parallel to the facts in *Mangus*. Instead, the facts in Baeza's case parallel the facts in *Finley*, where our Supreme Court refused to conclude that the unique circumstances

15

doctrine applied because Finley had misled the court to obtain the extension. Thus, based on our Supreme Court's holding in *Finley* and this court's holding in *Mangus*, the trial court correctly ruled that the unique circumstances doctrine did not excuse Baeza's untimely service of process.

Finally, it is worth mentioning that in *Finley*, our Supreme Court also held that the unique circumstances doctrine applies only when the untimely filing was a result of a nonparty error. 285 Kan. at 211. Again, in Baeza's motion and at the hearing, Antosh stated that Baeza's failure to timely serve process was his error. Additionally, in arguing that the unique circumstances doctrine applied, Antosh told the trial court that if the trial court had not granted the 30-day extension of time to serve process, he would have timely served process on Ali by tacking the summons on Ali's door himself. By making this statement, Antosh admitted that the failure to timely serve process was a party error. Clearly, the unique circumstances doctrine cannot excuse a plaintiff's untimely service of process when that plaintiff admits that he could have timely served process without the extension. Therefore, Baeza's unique circumstances argument also fails because his untimely service resulted from party error.

*Conclusion*

For the foregoing reasons, the trial court correctly concluded that Baeza had failed to show good cause for the 30-day extension of time to serve process under K.S.A. 2014 Supp. 60-203(a)(1). Moreover, the trial court correctly concluded that the unique circumstances doctrine did not excuse Baeza's untimely service on Ali. Because Baeza has failed to show good cause for the extension or, alternatively, that the unique circumstances doctrine saved his action, Baeza did not timely serve process on Ali when he ultimately served a summons on Ali 120 days after he filed his petition. Consequently, Baeza's action was not commenced on May 14, 2014, when he had filed his petition just 3 days before the statute of limitations expired. As a result, the trial court properly

16

dismissed Baeza's action with prejudice because Baeza's action was now barred by the statute of limitations. Accordingly, we affirm the trial court's dismissal of his case with prejudice.

Affirmed.