NOT DESIGNATED FOR PUBLICATION

No. 113,081

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JON P. ROSS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES and PHILLIP B. JOURNEY, judges. Opinion filed July 15, 2016. Affirmed.

*Stephen T. Ariagno*, of Ariagno, Kerns, Mank & White, L.L.C., of Wichita, and *Kristen B. Patty*, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON and SCHROEDER, JJ.

BUSER, J.: After a bench trial on stipulated facts, Jon P. Ross was convicted of driving under the influence of alcohol (DUI) (K.S.A. 2013 Supp. 8-1567[a][3], [b][1][A]), following too closely (K.S.A. 8-1523), and failure to wear a seat belt (K.S.A. 2013 Supp. 8-2503). Ross appeals his DUI conviction contending the district court erroneously denied his motion to suppress evidence.

FACTUAL AND PROCEDURAL BACKGROUND

After his arrest and prior to the bench trial, Ross moved to suppress evidence of intoxication obtained after his arrest for DUI. In his motion to suppress evidence, Ross alleged that Kansas Highway Patrol Trooper Reed Sperry illegally arrested him for DUI without probable cause. As a result, Ross argued that all incriminating evidence obtained following the arrest should be suppressed as fruit of the poisonous tree.

A hearing on Ross' motion was held on January 15, 2015. The only witness to testify was Trooper Sperry. The trooper testified that on August 2, 2013, he was dispatched to an accident on Interstate 135, about 1/8-mile north of a tollgate on the Kansas Turnpike. At the accident scene, the trooper saw a brown pickup truck which had been driven by Ross and a black passenger car which had been driven by Delores Gloria. Based on the "crush damage" Trooper Sperry observed on the vehicles, he determined that Ross' pickup truck had rear-ended Gloria's automobile. Upon the trooper's arrival, both drivers were standing outside their damaged vehicles.

Trooper Sperry first made contact with Ross to determine if he needed medical assistance. In response, Ross informed the trooper that he was not injured during the collision. During this brief exchange, Trooper Sperry noticed "a strong odor of an alcoholic beverage coming from [Ross'] person." Trooper Sperry also testified that Ross "had bloodshot, watery eyes and his speech was slurred[, and he h]ad some trouble maintaining his balance," as he was "leaning up against [his pickup]" when the trooper first noticed him. Upon request, Ross provided Trooper Sperry with his driver's license, and Ross' passenger retrieved the proof of insurance from the glove compartment, which Ross handed to the trooper with no apparent difficulty. The trooper instructed Ross, for his safety, to sit in his truck while he made contact with Gloria. Trooper Sperry did not recall if Ross had any difficulty getting into his truck.

2

After conversing with Gloria, Trooper Sperry spoke again to Ross. The trooper asked Ross if he had "consumed any alcohol that evening." Ross replied, "yes, after [I] got off work in downtown Wichita." During this conversation, Ross appeared to understand the trooper's questions and gave appropriate responses. But the trooper noticed that Ross' speech was "very slurred" and his words were "long, drawn out, [and] hard to understand." Trooper Sperry asked Ross to follow him to his patrol car. Although Trooper Sperry did not notice any unsteadiness when Ross left his truck or entered the patrol car, the trooper testified that Ross' "balance was unsteady" and Ross "was unsteady, just staggering, unbalanced coordination" as he walked from his truck to Trooper Sperry's patrol car.

"[D]ue to the crash and the circumstances at hand," Trooper Sperry opined that Ross was "impaired to a degree that would render him incapable of safely operating a vehicle." Trooper Sperry summarized the reasons for his decision to arrest Ross upon the following factors:

> "His—again, his bloodshot, watery eyes; his very slurred speech, the odor of an alcoholic beverage coming from his person; . . . due to the fact the crash had happened, incapable of operating a vehicle safely with regards to other vehicles. And I believe his statements just about his alcohol consumption that evening."

As a result, Trooper Sperry placed Ross under arrest for DUI.

Prior to the arrest, Trooper Sperry did not ask Ross to perform field sobriety tests, nor did he ask him to submit to a preliminary breath test (PBT). When questioned regarding his decision not to conduct additional testing at the scene, Trooper Sperry explained that the collision occurred on a Friday night on the three lane highway leading to the tollgate with fairly heavy traffic and "numerous law enforcement, EMS, and fire

3

vehicles in the area." Additionally, there was an impending "downpour" and "[f]or a much safer location, that's why [Ross] was taken to the headquarters."

After considering the testimony and listening to arguments, Judge Ternes denied the motion to suppress. The judge explained:

"First, I want to thank everyone for their patience so that I could review the [*City of Norton v.*] *Wonderly*[, 38 Kan. App. 2d 797, 172 P.3d 1205 (2007), *rev. denied* 286 Kan. 1176 (2008)] case, the case in question here. It was cited in the motion and argued by both counsel, so I did want to take a moment to review it, which I did.

"The Court has to make a determination at this point if there was probable cause to arrest. I think that's a subject matter of the motion to suppress.

"I would agree to some extent with [Ross' counsel] that the cases are very similar. Specifically, in the arrest in the *Wonderly* case, the Court determined that the following facts were at least alleged by the State to support probable cause to arrest: That Mr. Wonderly disobeyed the order of the officer, that he had bloodshot, watery eyes; he smelled of alcohol, he had admitted to drinking. And there was also a citizen report that he had driven recklessly.

"There was also information in the *Wonderly* case that the defendant in that case had not been observed by the officer to be committing any violations of traffic laws; that while that was reported by the citizen, it was not observed by the officer; that he behaved normally and that his speech was okay.

"In the *Wonderly* case, the Court determined that there was insufficient evidence to support probable cause based on those facts.

"It should be noted that in the *Wonderly* case, that after Mr. Wonderly was arrested, he was taken back apparently to the police station and further investigation was done. That doesn't necessarily concern us here.

"In this case, there are some similar factors. The trooper had noticed that Mr. Ross had bloodshot, watery eyes; that he did smell of alcohol, he admitted drinking. The officer did not specifically view any violations such as reckless driving in this case. And he said many of his actions were normal with regard to coordination and dexterity.

"There are some distinguishing factors here, however. The trooper in this case did observe that his speech was not just a bit slurred but it was very slurred, in contrast to

4

the speech in the *Wonderly* case. He also testified that Mr. Ross's balance was not good; that he leaned on the truck at one point; and that his walking was unsteady as he made his way from his car, from Mr. Ross's car, to the patrol car.

"I would also note that Mr. Ross when initially questioned by the officer stated that he was not injured. And while I don't know whether he was ultimately injured or not, I think that's important to show that he was not complaining of any injury that might account for the unsteady walking.

"I also can't ignore the fact that this was a crash in which Mr. Ross was a driver. And while I don't know whether traffic laws were violated or not, I think we need to look at the probable cause standard which essentially imposes upon the officer a determination of whether guilt is more than a mere possibility.

"Based on the information that the officer had, I think that *Wonderly* can be distinguished as I have stated above. I do find there is probable cause to arrest under these circumstances based on the observations of the trooper.

"I do believe the *Wonderly* case is close and I don't believe, or I'm not making a determination at this point whether it's evidence beyond a reasonable doubt, which I don't have to do. But I am making a finding that there was probable cause to arrest, and I am denying the motion to suppress based on that."

On October 8, 2014, District Judge Phillip Journey conducted a bench trial based on stipulated facts. At the trial, Ross' counsel explained, "We're proceeding [on] stipulated facts to preserve Mr. Ross' right to appeal." Upon inquiry by the district court, Ross' counsel also acknowledged that after Ross' arrest he "did poorly on the field sobriety test" and refused a breath test. Based on the evidence presented, Judge Journey found Ross guilty of DUI and the two related traffic offenses.

On December 2, 2014, Ross was sentenced to 12 months' probation with an underlying jail term of 6 months. He filed a timely appeal.

DISCUSSION

On appeal, Ross broadly challenges Judge Ternes' ruling that Trooper Sperry had probable cause to arrest him for DUI. Ross essentially presents two arguments. First, Ross asserts the "district court erred when it evaluated probable cause to arrest under a standard expressly disapproved by the Supreme Court." Second, Ross claims "[u]nder these facts, the district court erred when it concluded that [Trooper] Sperry had probable cause to arrest Ross." In support of this claim, Ross argues that "[b]ecause [Trooper] Sperry did not administer field sobriety tests and the PBT at the scene, he did not have the probable cause required to arrest Ross," Trooper Sperry did not see Ross commit a moving violation, the district court gave the vehicle accident "dispositive significance regarding a conclusion of probable cause," and the "remaining facts noted by the district court [were] insufficient to establish probable cause to arrest."

*Issue Preservation*

Preliminarily, the State asserts our court should decline to review Ross' appeal because the defendant failed to contemporaneously object at the bench trial to the admission of the incriminating evidence that was obtained following Ross' arrest. As a result of this omission, according to the State, Ross did not provide Judge Journey the opportunity to revisit Judge Ternes' prior ruling on the suppression motion.

We are not persuaded by the State's procedural argument. Our Supreme Court has held that in a bench trial consisting solely of stipulated facts, the lack of a contemporaneous objection does not prevent review of the suppression issue. *State v. Kelly*, 295 Kan. 587, 591-94, 285 P.3d 1026 (2012) (different judges presided over the hearings); *State v. Bogguess*, 293 Kan. 743, 746-47, 268 P.3d 481 (2012) (same judge presided over suppression hearing and bench trial). As a result, we will consider the merits of the issue as presented by Ross.

6

*Standard of Review*

At the outset, our standard of review in suppression of evidence matters is well settled. Appellate courts apply a bifurcated standard when reviewing the propriety of a district court's decision on a motion to suppress. First, the court reviews the factual findings underlying the district court's suppression decision by a substantial competent evidence standard. Second, we consider the ultimate legal conclusion drawn from those factual findings by a de novo standard. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). The State bears the burden of proof upon the hearing of a motion to suppress evidence; it must prove the lawfulness of the search and/or seizure. *Reiss*, 299 Kan. at 296.

*The Probable Cause Standard*

The parties agree that Ross was under arrest when Trooper Sperry transported him from the scene of the accident to the Highway Patrol headquarters for additional field sobriety and alcohol breath tests. On appeal, the dispute is focused solely on the legality of Ross' warrantless arrest at the accident scene.

For a warrantless arrest to be lawful, probable cause must support it. *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012). As Ross asserts in his first argument, our Supreme Court recently disapproved of Judge Ternes' characterization of probable cause. Judge Ternes said that the probable cause standard "essentially imposes upon the officer a determination of whether guilt is more than a mere possibility."

In *Sloop*, however, our Supreme Court determined that a probable cause calculus which requires only that "'quantum of evidence that would lead a reasonably prudent police officer to believe that guilt is more than a *mere* possibility'" is "overly generous." 296 Kan. at 21-22. The court then clarified that "[p]robable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime." *State v. Johnson*, 297 Kan. 210, 222, 301 P.3d 287 (2013); see *Sloop*, 296 Kan. at 20-21.

The State counters that Ross may not complain about Judge Ternes' use of an outdated formulation of probable cause because he invited this error by citing that standard in his motion to suppress. Our review of the record, however, shows that Ross' error was replicated by the prosecutor at the hearing on the motion to suppress when, on two occasions, he made arguments using the outdated formulation.

As a general rule, a litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). We decline to apply the rule in this instance, however, because the outdated formulation was referenced by both parties and it has a long tradition of citation prior to *Sloop*. See *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 775-76, 148 P.3d 538 (2006) (quoting *Sullivan v. Kansas Dept. of Revenue*, 15 Kan. App. 2d 705, 707, 815 P.2d 566 [1991]).

A district court's erroneous use of an outdated legal formulation when making a probable cause determination does not require, as Ross argues, automatic reversal of the district court's ruling. As a panel of this court explained in *Hagan v. Kansas Dept. of Revenue*, No. 108,627, 2013 WL 5303541, at *3 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1269 (2014):

8

"[E]ven though the district court clearly used the probable cause standard recently disapproved of by our Supreme Court in *Sloop*, if a district court reaches the correct result, its decision on appeal will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. See *Hockett v. The Trees Oil Co.,* 292 Kan. 213, 218, 251 P.3d 65 (2011). Even though the *Sloop* court disapproved of that standard it proceeded to analyze the evidence to determine if there was probable cause to make an arrest."

As noted earlier, the question of whether probable cause exists is a question of law that is reviewed de novo by appellate courts. This de novo review, however, can only be based on undisputed facts or factual findings made by the district court. *State v. Jones*, 300 Kan. 630, 643, 333 P.3d 886 (2014); *Sloop*, 296 Kan. at 23. Here, the essential facts are undisputed and only the legal conclusion is in question. Accordingly, we will apply the correct formulation of probable cause to the undisputed facts as found by the district court.

In evaluating the facts of this case, we will apply this legal precept: "'Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.' [Citations omitted.]" *Sloop*, 296 Kan. at 21. In employing this test we are mindful that "'[a]s in other totality of the circumstances tests, there is no rigid application of factors and courts should not merely count the facts or factors that support one side of the determination or the other.' [Citations omitted.]" 296 Kan. at 20.

*Assessment of Probable Cause to Arrest for DUI*

Next, we address Ross' claim that "this Court has expressed a preference, in criminal cases like this one, that field sobriety tests and the PBT be offered at the scene." The point of this argument is unclear. Ross cites to Kansas cases wherein a driver

suspected of DUI was transported from the scene of the traffic stop and the issue on appeal was whether the driver was, therefore, under arrest prior to the officer's request for a PBT. In this case, however, the parties are in agreement that Ross was under arrest prior to field sobriety testing and a request for a breath test.

Ross seems to suggest that a lawful finding of probable cause *requires* incriminating evidence from a field sobriety test and PBT, but he provides no Kansas caselaw support. Contrary to this argument, Trooper Sperry was not obligated to offer Ross field sobriety tests or a PBT prior to his arrest because the outcome of such tests is not "crucial to a determination of probable cause." As a panel of this court explained in *State v. Wagner*, No. 112,730, 2015 WL 6620621, at *7 (Kan. App. 2015) (unpublished opinion):

> "While field sobriety testing is useful for establishing probable cause that a driver is under the influence of alcohol, it is just one tool that officers use to determine whether a driver is capable of driving safely. See *State v. Huff*, 33 Kan. App. 2d 942, 945, 111 P.3d 659 (2005). Field sobriety testing, however, is not necessary to establish probable cause. 33 Kan. App. 2d at 945, 111 P.3d 659. A probable cause determination is made based on the totality of the circumstances. *Sloop*, 296 Kan. at 20, 290 P.3d 555."

We find no merit in Ross' argument that field sobriety testing and a PBT are required prior to any lawful finding of probable cause for a DUI arrest.

Ross also places significance in the fact that Trooper Sperry did not see Ross commit a moving violation which he asserts is "an important factor in the determination of whether he had probable cause to arrest Ross." In support, Ross cites caselaw reversing a probable cause finding where the arresting officer (among other factors) had not observed a moving violation and also had personally observed the driver operating a vehicle safely before the traffic stop. See *Sloop*, 296 Kan. at 22; *City of Norton v.*

*Wonderly*, 38 Kan. App. 2d 797, 172 P.3d 1205 (2007), *rev. denied* 286 Kan. 1176 (2008).

Unlike the precedent cited by Ross, in the present case, Trooper Sperry did not observe Ross driving safely prior to the collision. But Trooper Sperry did see that Ross' truck had rear-ended Gloria's automobile, which ultimately resulted in Ross being charged with following too closely in violation of K.S.A. 8-1523(a). Similar to Ross' argument that incriminating evidence from sobriety tests and a PBT are required before a finding of probable cause, his claim that a moving violation must be personally observed by an officer in order for a lawful finding of probable cause to be made is also without merit.

Next, Ross complains that the district court gave the vehicular accident "dispositive significance regarding a conclusion of probable cause." Ross bases his claim of "dispositive significance" on Judge Ternes' statement, "I also can't ignore the fact that this was a crash in which Mr. Ross was a driver." As detailed in the Factual and Procedural Background section, however, Judge Ternes provided a thorough exposition regarding his many reasons for finding the existence of probable cause. We can find no indication in the record on appeal that the district judge gave special importance or primary significance to the vehicle collision in comparison to the totality of circumstances which were indicative of Ross' intoxication.

For his final issue on appeal, Ross primarily relies upon *Sloop*, *State v. Pollman*, 41 Kan. App. 2d 20, 204 P.3d 630 (2008), and *Wonderly* to support his assertion that Trooper Sperry did not have probable cause to arrest Ross for DUI. In all three of these cases, an appellate court held that the material facts did *not* show probable cause to arrest the driver for DUI. Where applicable, we will compare and contrast the individual factors comprising probable cause in this case as they relate to *Sloop*, *Pollman*, and *Wonderly*.

11

*Arresting Officers' Observation of Safe Driving*

Prior to the arrest, Trooper Sperry did not observe Ross driving safely. In *Sloop*, *Pollman*, and *Wonderly,* however, the arresting officers observed the drivers, later arrested for DUI, operate their vehicles in a relatively safe manner. In this regard, *Sloop*, *Pollman*, and *Wonderly* are distinguishable because, unlike the present case, the arresting officers had evidence of safe driving immediately prior to the DUI arrest.

*Admission to Drinking Alcoholic Beverages*

Similar to *Pollman* and *Wonderly*, Ross admitted to drinking alcoholic beverages in the evening prior to his arrest. In *Sloop*, however, the driver stated only that he had consumed "like one beer at a friend's house" at an unknown time prior to the traffic stop. *Sloop*, 296 Kan. at 14-15. *Sloop* is noteworthy for its scant evidence of the driver consuming alcoholic beverages prior to the police encounter.

*Odor of Alcohol*

In all four DUI cases, officers detected the odor of alcohol on the drivers. What distinguishes Ross, however, is Trooper Sperry's description of the smell as "a strong odor" compared to "smelled of alcohol" *Sloop*, 296 Kan. at 14; "'smelled alcohol'" *Pollman*, 41 Kan. App. 2d at 22; or "smell of alcohol" *Wonderly*, 38 Kan. App. 2d at 808.

*Condition of the Drivers' Eyes*

In both Ross' case and *Sloop,* the drivers' eyes were characterized as bloodshot and watery. These two cases contrast with *Wonderly* where the driver only had bloodshot eyes and *Pollman* where, other than the odor of alcohol, there were "'no other typical indicators signaling that Pollman had been drinking.'" *Pollman*, 41 Kan. App. 2d at 22.

12

*Difficulty in Communication*

Ross' case is especially noteworthy for Trooper Sperry's incriminating testimony that Ross' speech was "very slurred" and his words were "long, drawn out, [and] hard to understand." In contrast, Sloop's speech was "'impaired' but not slurred" *Sloop*, 296 Kan. at 15, Pollman's speech was not mentioned, and Wonderly's speech was "'fair' and 'not particularly slurred.'" *Wonderly*, 38 Kan. App. 2d at 800.

*Balance and Coordination*

Ross' case markedly contrasts with the other three cases because of the damaging testimony about the driver's lack of balance and coordination. Upon his first encounter with Ross, Trooper Sperry noted that Ross "[h]ad some trouble maintaining his balance," as he was "leaning up against his [pickup]." Later, when Trooper Sperry asked Ross to follow him to his patrol car, he noticed that Ross "was unsteady, just staggering, unbalanced coordination" as he walked from his truck to Trooper Sperry's patrol car. While, on appeal, Ross speculates that his poor balance and coordination could have been the result of being injured in the accident, the only evidence produced at the suppression hearing was Trooper Sperry's testimony that at the scene Ross stated he was not injured.

In marked contrast with Ross, Sloop was "steady when walking" *Sloop*, 296 Kan. at 15; Pollman's balance was not mentioned as indicative of intoxication; and Wonderly had "no problems" walking back to the police car. *Wonderly*, 38 Kan. App. 2d at 800.

*Handling of Driver's Licenses*

In all four cases, the drivers did not have any apparent difficulty locating and handling their driver's licenses.

*Involvement in a Vehicular Accident*

Unlike the other three cases, Ross's case is the only one which involved a vehicular accident. This accident took place on the approach to a Kansas Turnpike Authority toll booth, when Ross' truck rear-ended Gloria's automobile. Trooper Sperry testified to considerable training in DUI investigations. He noted that he was trained to consider "the circumstances leading up to the accident" as a clue or indicator of intoxication. Our Supreme Court has acknowledged: "Obviously, evidence of unsafe driving can suggest intoxication." *City of Wichita v. Molitor*, 301 Kan. 251, 268, 341 P.3d 1275 (2015). In this case, upon his investigation, Trooper Sperry considered the circumstances of the accident as one factor indicating Ross was "incapable of operating a vehicle safely with regards to other vehicles."

In conclusion, we have compared and contrasted this case with *Sloop*, *Pollman*, and *Wonderly*. While the four cases share some similarities and dissimilarities regarding both incriminating and exculpatory DUI factors, the totality of incriminating evidence in this case is more serious and prevalent than the precedent relied on by Ross. We are persuaded that the facts and circumstances within Trooper Sperry's knowledge and of which he had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that Ross had committed DUI. See *Sloop*, 296 Kan. at 21. Given our legal conclusion, and despite Judge Ternes' use of an outdated formulation of probable cause, we uphold the judge's ruling denying Ross' motion to suppress evidence. See *Hockett v. The Trees Oil Co.*, 292 Kan. 213, 218, 251 P.3d 65 (2011).

Affirmed.

14

*\*\**

ATCHESON, J., dissenting:  I respectfully dissent and would find the Sedgwick County District Court erred in denying Defendant Jon P. Ross' motion to suppress evidence obtained from him after he was arrested for driving under the influence. In *City of Wichita v. Molitor*, 301 Kan. 251, 341 P.3d 1275 (2015), the Kansas Supreme Court effectively recalibrated the scale for weighing direct and circumstantial evidence of intoxication in a way favoring defendants. The district court did not have the advantage of the *Molitor* decision when it ruled, and the majority gives the decision short shrift in its review. Consistent with *Molitor*, the circumstances here failed to establish probable cause to arrest Ross. In turn, any evidence obtained from Ross following his arrest should have been suppressed.

An arrest is a seizure to which the protections of the Fourth Amendment to the United States Constitution apply. Accordingly, a government agent effecting an arrest must have knowledge of a warrant issued by a judge or circumstances establishing probable cause to believe the individual arrested has committed a crime. *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). If an individual has been arrested without a warrant or probable cause, evidence then obtained from that individual typically will be suppressed in any criminal prosecution of him or her. See *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Those are legal givens nobody disputes in this case. Likewise, the rule of suppression or exclusion is subject to some exceptions. But no exception would plainly apply here, and the State has suggested none.

Highway Patrol Trooper Reed Sperry arrested Ross for driving under the influence in August 2013. The district court heard and denied Ross' motion to suppress on January 15, 2015—15 days before the Kansas Supreme Court handed down its decision in *Molitor*. Sperry was the only witness at the suppression hearing, and the district court credited his testimony. We do the same on appellate review. The issue before us is

15

whether Sperry's observations established probable cause to believe Ross had been driving under the influence, thereby legally justifying the arrest. That presents a question of law over which appellate courts exercise unlimited review. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007). And *Molitor* pretty much dictates the answer.

The issue in that case was whether a law enforcement officer had reasonable suspicion of intoxication, so Molitor could be given a preliminary breath test. *Molitor*, 301 Kan. at 268-69. Law enforcement officers, of course, commonly consider the same sort of factual circumstances in determining reasonable suspicion or probable cause when it comes to suspected drunk drivers. Both determinations rest on the totality of those circumstances. But reasonable suspicion is a materially lower evidentiary mark than probable cause. *State v. Pollman*, 286 Kan. 881, Syl. ¶ 6, 190 P.3d 234 (2008). In *Molitor*, a majority of the court found that the evidence there failed to establish reasonable suspicion to support a request for a preliminary breath test. 301 Kan. at 268-69. *A fortiori*, comparable circumstances could not furnish legally sufficient evidence—probable cause—for a drunk driving arrest.

To my view, the totality of the circumstances bearing on Ross' intoxication, as outlined in Sperry's testimony at the suppression hearing, does not differ significantly from the overall evidence the majority found wanting in *Molitor*. To be sure, some particular facets of the evidence indicating Ross may have been under the influence cut the other way as to Molitor and vice versa. Overall, however, the evidence of Ross' intoxication wasn't appreciably greater than what was offered against Molitor. The evidence, therefore, cannot amount to probable cause, and the motion to suppress should have been granted.

The evidence regarding Molitor's intoxication, outlined in both the majority opinion, 301 Kan. at 265, and the dissent, 301 Kan. at 272, shows:  (1) Molitor admitted drinking (he said two or three beers, which the majority seems to imply should be

16

credited for reasons that aren't immediately apparent); (2) his eyes were bloodshot and watery; (3) he had a strong odor of alcohol about him; (4) and he drove up on the curb as he stopped in response (I presume) to the emergency lights or siren on the officer's car. Molitor appeared unsteady on a couple of the field sobriety tests, but his performance was not considered failing. He produced his driver's license without any difficulty, and his speech was unimpaired. There was no audio-visual recording of the stop in *Molitor*.

Based on Sperry's testimony at the suppression hearing, Ross had bloodshot, watery eyes; an odor of alcohol; "very slurred speech;" and impaired balance. Ross told Sperry he had consumed an unquantified amount of some unspecified alcoholic beverage or beverages after work. That is, Ross admitted he had been drinking. Sperry did not have Ross perform any field sobriety tests and did not ask Ross to take a preliminary breath test before arresting him. Sperry testified that Ross produced his driver's license without difficulty. Notwithstanding his slurred speech, Ross provided coherent, appropriate responses to the questions Sperry asked. Ross, in other words, answered sensibly, indicating at least a fair degree of acuity. Sperry testified Ross got in and out of his truck and in and out of the police car without any noticeable problems. But he was unsteady walking between the vehicles, although he successfully navigated the journey. Ross plainly was not falling down drunk, though it's hard to conclude much else.

The majority in *Molitor* considered those sorts of observations to be imprecise circumstantial evidence bearing more on the fact of alcohol consumption itself than on degree of impairment. The majority also found that evidence open to subjective interpretation and conclusion on the part of an arresting officer. 301 Kan. at 266-67. The same is true here. Neither side offered a contemporaneously recorded video of the interaction between Sperry and Ross. (I suppose because there wasn't one.) A recording might well have provided significant and largely objective evidence about the clarity and coherence of Ross' speech and his physical unsteadiness.

17

Sperry cited the collision as evidence of Ross' impairment. The hearing evidence doesn't really support that conclusion. At the scene, Sperry saw damage to the front of Ross' pickup and damage to the rear of a sedan. According to the hearing transcript, Sperry relied on those limited observations about the collision in making the decision to arrest Ross. He had not interviewed Ross, the other driver, or any possible witnesses about what happened. Rather, Sperry simply concluded Ross was at fault because he had rear-ended the other driver and had been drinking. But the collision could have been the result of the other driver stopping suddenly for no apparent reason or quickly changing lanes without signaling. So to conclude Ross was at fault amounted to speculation. And, in turn, to say Ross was sufficiently intoxicated to be impaired based on the collision is circular: Sperry concluded fault because Ross had been drinking and rear-ended the other vehicle and then used that fault to support the idea Ross was legally intoxicated. The logic is slippery. In any event, that seems less telling than the officer watching Molitor drive up on the curb, a circumstance furnishing direct evidence of a substantial driving error.

Qualitatively (or examining the totality of the circumstances), the sum of the evidence in *Molitor* looks to be roughly the same as the evidence we have here. Even if there were more evidence of Ross' intoxication, the difference isn't so marked as to remove this case from the realm of reasonable suspicion, given the outcome in *Molitor*, let alone launch it past the threshold for probable cause. Had the district court the benefit of *Molitor*, it should have granted Ross' motion to suppress. We have that benefit. Consistent with *Molitor*, we ought to reverse and remand with directions to grant the motion.