IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,333

IN THE MATTER OF THE ESTATE OF RAY V. OROKE

SYLLABUS BY THE COURT

1.

In order to commence an action in probate regarding the contents of a will, a petitioner must file the will with the court and commence the action within six months after the death of the testator. This functions as a statute of limitations.

2.

K.S.A. 59-618 provides for an exception to the six-month limitation period when someone who knows where a will is located knowingly withholds it from the court.

3.

A district court clerk has a duty under Kansas statutes and a Kansas Supreme Court rule to maintain and make available wills that have been duly filed with the clerk of the district court.

4.

A unique circumstances test requires both a demonstration of good faith by the party seeking an enlargement of time and a reasonable basis for noncompliance within the time specified by the rules. The unique circumstances doctrine is an elastic concept that is appropriate to prevent a party from suffering prejudice as a result of a mistake by the clerk of the district court.

1

5.

The application of the unique circumstances doctrine depends upon such concepts as equity, the interests of justice, good faith, estoppel, or nonparty error. It is limited in application to situations in which the error was by a nonparty and the parties did not contribute to creating the error. The unique circumstances doctrine is still viable, in the appropriate situation, to prevent a cause of action from being barred by the statute of limitations.

6.

When a district court clerk is entrusted with the custodianship of a will but is unable to produce the will in time for a party to file a timely petition to probate the will, the statute of limitations may be tolled so long as the rights of the parties are not substantially impaired.

7.

Equitably tolling the statute of limitations provides a realistic and fair remedy for an unusual situation not contemplated by the statutory scheme. This is not a modification of *In re Estate of Strader*, 301 Kan. 50, 339 P.3d 769 (2014), but a holding limited to the unique and rare circumstances in this case of a clerk of the district court not following a duty imposed by law.

8.

Kansas Supreme Court Rule 7.07 (2019 Kan. S. Ct. R. 50) sets forth three requirements this court must consider when attorney fees are sought on appeal. First, this court may award attorney fees for services on appeal if the district court had authority to award attorney fees. Under the facts of this case, authority to award attorney fees is found under K.S.A. 59-1504, which permits necessary expenses and attorney compensation

from the estate when any person named in a will seeks to admit it to probate, whether successful or not.

9.

Second, a motion for attorney fees on appeal must be made under Supreme Court Rule 5.01 (2019 Kan. S. Ct. R. 30) and be filed no later than 14 days after oral argument or 14 days after the day argument is waived or the date of the letter assigning the case to a nonargument calendar, whichever is later. A motion filed after a Kansas Supreme Court oral argument is not timely filed for consideration of the fees for services while the appeal was pending in the Court of Appeals.

10.

Third, a movant must attach an affidavit to the motion for attorney fees specifying: (A) the nature and extent of the services rendered; (B) the time expended on the appeal; and (C) the factors considered in determining the reasonableness of the fee, which are set forth in Kansas Rule of Professional Conduct 1.5 (2019 Kan. S. Ct. R. 300).

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 31, 2017. Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed August 2, 2019. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed, and the case is remanded.

*Michael Jilka*, of Nichols Jilka LLP, of Lawrence, argued the cause and was on the briefs for appellant Karen Barney.

*Arthur E. Palmer*, of Goodell Stratton Edmonds & Palmer, LLP, of Topeka, argued the cause, and *Bruce H. Hanson*, of Oskaloosa, was with him on the briefs for appellee Donna Fairbanks.

The opinion of the court was delivered by

MALONE, J.: A testator deposited his original will and a codicil with the probate court of his home county as permitted by statute. The statute mandated the district court to retain the will during the lifetime of the testator and to open the will publicly and retain the same upon being notified of the testator's death. K.S.A. 59-620 (Furse 1994).

A few weeks after the testator's death, heirs tried to locate the will at the courthouse. The clerk of the court was unable to find it and informed the heirs that the will was not in the custody of the court. The heirs searched for the will at other locations to no avail. Eventually, the testator's daughter filed an intestate probate proceeding. While the intestate proceeding was pending, and after the limitation period for petitioning a will for probate had passed, the clerk of the court located the will and codicil among the files of the probate court.

The testator's stepdaughter filed a separate petition to probate the will. The district court consolidated the two probate proceedings and admitted the will to probate. The testator's daughter appealed. The Court of Appeals reversed the ruling of the district court, citing statutory language limiting the circumstances that toll the limitation period and caselaw by this court interpreting these provisions. This court granted the stepdaughter's petition for review.

After oral argument before this court, the stepdaughter moved for appellate attorney fees to be paid from the estate.

The primary question before this court is whether the will in the authorized custody of the district court, but not found until after the statute of limitations had expired, should be admitted to probate. We ultimately hold that it should be admitted to probate. We also grant, in part, the motion for attorney fees.

4

Ray V. Oroke was a resident of Jefferson County, Kansas. During the relevant time period, K.S.A. 59-620 (Furse 1994) permitted a party to deposit a will in the district court of the county where the testator resided upon the payment of a deposit fee of one dollar. The statute required the court to give a certificate of the deposit and to "retain such will." After being notified of the testator's death, the court was required to open the will publicly and retain the same. K.S.A. 59-620 (Furse 1994) was repealed in 1995. L. 1995, ch. 103, § 2.

On July 14, 1954, Oroke executed a Last Will and Testament and deposited it with the Jefferson County probate judge as authorized by K.S.A. 59-620 (Furse 1994). He did this on the same day he executed it. The will was placed in an envelope bearing Oroke's full name and the name of his executor and was file-marked "No. 153."

On November 17, 1988, Oroke signed a codicil to the will naming new executors. His attorney filed it with the Jefferson County District Court on the same day it was signed and witnessed. The will and codicil were placed in an envelope bearing Oroke's full name and the names of his new coexecutors and was again file-marked "No. 153."

Karen Barney, Oroke's daughter, had discussed a will with her father several times and thought it was likely that a will existed somewhere. Kevin Barney (Karen's son and Oroke's grandson) also discussed a will with Oroke and was told that he and Donna Fairbanks (Oroke's stepdaughter and Karen's stepsister) were to be coexecutors. Oroke told Donna that a copy of the will was in his safety deposit box. Both Oroke and his lawyer mentioned to Donna that the will was registered at the courthouse.

5

Oroke died on October 15, 2014. On November 6, 2014, Karen; her daughter, Laura; her son, Kevin; and Donna went will hunting. First, they visited the McLouth bank where Oroke had a safety deposit box. They did not find a will there, but they found an unsigned codicil to a will.

The group then went to the Jefferson County courthouse. Laura, Kevin, and Donna went inside, while Karen waited in the car. Kevin asked an employee of the clerk of the district court if the will was on file at the court. The court employee said "they didn't know anything about that" but then asked someone in the back of the clerk's office if the will was on file. The court employee returned and said the court had no will and codicil on file for Oroke, that "they used to do that, but they don't do that anymore," and that the family might try the title of deeds office. Undeterred, the family went to the register of deeds office, where a search once again failed to produce a will. Kevin later spoke with a lawyer who had bought the law office from Oroke's retired lawyer, but the lawyer was unable to locate any documents relating to Oroke. Kevin and Laura next went to Oroke's house and looked for the will without success.

On March 10, 2015, Karen filed a petition in Jefferson County District Court requesting the issuance of letters of administration. The petition asserted that Oroke died intestate. On April 29, 2015, the court granted the petition and appointed Karen administrator of the estate.

In mid-September 2015, Donna hired a lawyer to find the will. On September 25, 2015, with the assistance of the lawyer, the will and codicil were located among the files of the Jefferson County probate court. On September 28, 2015, Donna filed a written opposition to the petition for letters of administration and asked the court to terminate Karen's appointment as administrator and freeze all transfers of assets from the estate.

6

Donna filed her own petition for probate of the will and for letters testamentary. Donna attached the original will and codicil; the envelopes that contained them; and a September 10, 1973, signed certificate by Oroke stating that he had opened envelope No. 153 to inspect the will, returned the will to envelope No. 153, resealed the envelope, and returned it to the custody of the probate judge. (These September 10, 1973, events were witnessed by the probate judge.) Donna's petition was filed under a separate case number from Karen's proceeding, and the district court later consolidated the two cases.

Karen filed an objection to the petition for probating the will. Nevertheless, on November 3, 2015, the district magistrate judge granted Donna's petition and admitted the will to probate. Karen took a timely appeal from that decision to the district court.

On July 13, 2016, the district court rejected Karen's appeal and entered an order admitting the will to probate. The court found that Donna and Kevin exercised due diligence in attempting to locate the will. The court further held that a mistake on the part of the court would toll the statute of limitations for filing a petition admitting a will to probate, and it named Donna and Kevin coexecutors of the will. Karen took a timely appeal to the Court of Appeals.

The Court of Appeals reversed the judgment of the district court, holding that the petition to probate the will was filed outside the statute of limitations; that no exceptions applied to toll the statute because the will was not "knowingly" withheld, and that this case was indistinguishable from *In re Estate of Strader*, 301 Kan. 50, 339 P.3d 769 (2014). *In re Estate of Oroke*, No. 116,333, 2017 WL 1196856 (Kan. App. 2017) (unpublished opinion). This court granted Donna's petition for review.

On October 24, 2018, oral argument was heard by this court. On November 5, 2018, Donna filed a motion for appellate attorney fees related to both the Court of

7

Appeals and Supreme Court proceedings to be paid from the estate. Karen filed no response to the motion.

## IS THE STATUTE OF LIMITATIONS TOLLED IF THE WILL IS IN THE AUTHORIZED CUSTODY OF THE DISTRICT COURT BUT NOT FOUND UNTIL THE STATUTORY TIME PERIOD HAD EXPIRED?

*Standard of Review*

The facts are undisputed. Application of legal principles to undisputed facts involves questions of law subject to de novo review. *In re Estate of Clare*, 305 Kan. 967, 969, 389 P.3d 1274 (2017).

*Analysis*

In order to commence an action in probate regarding the contents of a will, a petitioner must file the will with the court and commence the action within six months after the death of the testator. K.S.A. 59-617. This functions as a statute of limitations. *Strader*, 301 Kan. 50, Syl. ¶ 4.

K.S.A. 59-618 provides for an exception to the six-month limitation period when someone who knows where a will is located knowingly withholds it from the court:

> "Any person who has possession of the will of a testator dying a resident of this state, or has knowledge of such will and access to it for the purpose of probate, and knowingly withholds it from the district court having jurisdiction to probate it for more than six months after the death of the testator shall be liable for reasonable attorney fees, costs and all damages sustained by beneficiaries under the will who do not have possession of the will and are without knowledge of it and access to it. Such will may be admitted to probate as to any innocent beneficiary on petition for probate by any such

8

beneficiary, if such petition is filed within 90 days after such beneficiary has knowledge of such will and access to it, except that the title of any purchaser in good faith, without knowledge of such will, to any property derived from the fiduciary, heirs, devisees or legatees of the decedent, shall not be defeated by the production of the will of such decedent and the petition for probate of the will after the expiration of six months from the death of the decedent.

"The provisions of this section as amended by this act shall apply retroactively to the withholding of a will of a testator."

*Strader* is the lead case interpreting these provisions. The *Strader* court determined that the plain statutory language requires a knowing withholding of a will before the K.S.A. 59-618 exception to the six-month limitation will apply. It is not enough that a party be "innocent"; a party must have knowingly withheld a will from a court before an aggrieved party may benefit from the tolling of the limitation period. 301 Kan. at 57-58. This court expressly rejected an analysis of K.S.A. 59-618 that favored a result protecting "all innocent beneficiaries, regardless of the time that has passed after the testator's death." 301 Kan. at 58. A panel of the Court of Appeals had reasoned that either the knowing withholding or the unintentional misplacing of a will may defeat an innocent beneficiary's rights under the will, so allowing for late filing for either reason is logical. This court disagreed, relying instead on the plain language of K.S.A. 59-618 that requires "knowingly withhold[ing]" a will before the six-month limitation of K.S.A. 59-617 may be tolled. 301 Kan. at 60.

We disagree with the Court of Appeals determination that this case is not distinguishable from *Strader* "in any meaningful way." 2017 WL 1196856, at *3. In this case, the party that had possession of the will was not a potential beneficiary or lay person entrusted with keeping the will. Rather, the will was in the custody of the clerk of the district court, the court official who was in charge of safely keeping and preserving all

9

papers filed with the court. K.S.A. 2018 Supp. 20-343, K.S.A. 20-3102, and K.S.A. 2018 Supp. 60-2601.

Oroke's will was thus not lost, misplaced, or missing, but was right where it was lawfully supposed to be: in the custody and safekeeping of the court.

The will was deposited in the court under K.S.A. 59-620 (Furse 1994), and the court was required to retain the will. This practice of depositing wills for safekeeping with the court had been authorized by statute for over 125 years. See G.S. 1868, ch. 117, sec. 3; G.S. 1915, ch. 126, sec. 11755; R.S. 1923, 22-204; G.S. 1939 Supp. 59-620. And it is critical to note when the Legislature repealed the law in 1995, it did not undo the requirement for the court to retain the wills that had already been deposited, nor did the Legislature provide a method for relocating or transferring wills that were in the lawful custody of the court. All wills deposited pursuant to K.S.A. 59-620 (Furse 1994) could remain in the custody and safekeeping of the court.

To address the limbo created by the repeal of K.S.A. 59-620, Supreme Court Rule 108(e)(4)(A) (2019 Kan. S. Ct. R. 178) was enacted, which requires that "[s]ealed wills on deposit under former K.S.A. 59-620 must be maintained for 75 years after the year of deposit. . . . The formerly required will index must be maintained to include the date of destruction . . . ." The districts' chief judges and clerks of the court are therefore under a mandate from the Kansas Supreme Court to retain the wills and to maintain indexes showing that the wills are on file. In this case, only the clerk had access to the will, and the clerk had a duty to produce the will upon the request of any interested party. The clerk failed in that duty. It is this failure in duty that distinguishes this case from *Strader*.

The judicial employees' failure to follow the law thus calls into application the unique circumstances doctrine. "Our determination of both the viability and applicability

10

of the unique circumstances doctrine involves questions of law, over which this court has unlimited review." *Board of Sedgwick County Comm'rs v. City of Park City*, 293 Kan. 7, 113, 260 P.3d 387 (2011).

In *Slayden v. Sixta*, 250 Kan. 23, 30, 825 P.2d 119 (1992), this court considered a case in which the failure to obtain timely service on an opposing party was "due directly to the error of the clerk of the district court." We looked to federal precedent applying a unique circumstances test, which requires both a demonstration of good faith by the party seeking an enlargement of time and a reasonable basis for noncompliance within the time specified by the rules. 250 Kan. at 30. We considered the unique circumstances doctrine to be "an elastic concept" that is appropriate to prevent a party from suffering prejudice as a result of a mistake by the clerk of the district court. 250 Kan. at 30-31.

"[T]he application of the doctrine depends upon such concepts as equity, the interests of justice, good faith, estoppel, or nonparty error." *Finley v. Estate of DeGrazio*, 285 Kan. 202, 209, 170 P.3d 407 (2007). It is limited in application to situations in which the error was by a nonparty and the parties did not contribute to creating the error. In *Finley,* the court concluded that the application of the unique circumstances doctrine was limited to situations involving a party's reliance upon an error of the district court, as opposed to error by counsel. See 285 Kan. at 209-11 (doctrine limited to nonparty error and parties may not rely on doctrine when they invite nonparty error); see also *In re Tax Appeal of Sumner County*, 261 Kan. 307, 317, 930 P.2d 1385 (1997) (erroneous orders by administrative agency created unique circumstance justifying enlargement of time to petition for rehearing); *Nguyen v. IBP, Inc.*, 266 Kan. 580, 587, 972 P.2d 747 (1999) (administrative agency improperly addressed notice of award making it impossible for claimant to meet statutory time requirements).

11

In *Park City*, we further limited the use of this doctrine by prohibiting its use to create an equitable exception to jurisdictional requirements. 293 Kan. at 118-20 (citing *Bowles v. Russell*, 551 U.S. 205, 127 S. Ct. 2360, 168 L. Ed. 2d 96 [2007]); see also *Woods v. Unified Gov't of Wyandotte County/KCK*, 294 Kan. 292, 298, 275 P.3d 46 (2012) ("Recently, we abolished the unique circumstances doctrine . . . ."). However, the *Park City* court expressly distinguished its decision from *Finley,* a nonjurisdictional case involving a statute of limitations question:

> "[T]he Court of Appeals felt there was also some indication that the doctrine remained viable in Kansas. As previously noted, the Court of Appeals pointed to this court's decision in *Finley,* 285 Kan. 202, where this court cited to *Bowles* but still considered whether the doctrine applied to the facts of the case. *However, the Court of Appeals failed to recognize the distinction between* Bowles, *which dealt with a jurisdictional time limit related to the filing of a notice of appeal, and* Finley, *which dealt with a statute of limitations that is a defense related to a nonjurisdictional time limit and is subject to equitable tolling.* See, *e.g., Holland v. Florida,* 560 U.S. 631, 645, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (1-year statute of limitations on petitions for federal habeas relief by state prisoners is not jurisdictional and is subject to equitable tolling in appropriate cases) . . . .

> "In other words, this court's application of the unique circumstances doctrine in *Finley* has no application to the consideration of whether the doctrine should or can be applied when a time limitation is *jurisdictional.* Further, we note that the issue of whether *Bowles* brought the viability of the doctrine into question in *nonjurisdictional* settings was not presented to or decided by the court in *Finley*." (Emphasis added.) 293 Kan. at 118-19.

Caselaw has recognized "the unique circumstances doctrine is still viable, in the appropriate situation, to prevent a cause of action from being barred by the statute of limitations." *Mangus v. Stump*, 45 Kan. App. 2d 987, 998-99, 260 P.3d 1210 (2011), *rev. denied* 293 Kan. 1107 (2012); see *Huffman v. Stormont-Vail Healthcare, Inc.*, No.

12

113,383, 2016 WL 3655903, at *10 (Kan. App. 2016) (unpublished opinion) ("[T]he doctrine remains viable to save a cause of action from being dismissed on statute of limitations grounds."); *Baeza v. Kemal*, No. 113,057, 2015 WL 7162332, at *9-10 (Kan. App. 2015) (unpublished opinion), *rev. denied* 305 Kan. 1251 (2016) (analyzing unique circumstances doctrine under *Mangus* and *Finley*); *Dartez v. Peters*, No. 15-3255-EFM-DJW, 2018 WL 1138282, at *6-7 (D. Kan. 2018) (unpublished opinion) (no need to certify the continuing viability of the unique circumstances doctrine to this court based on *Park City* and *Mangus*).

The circumstances of this case conform in all respects with the requirements of the unique circumstances doctrine:  the failure to conform to time restrictions was due directly to the error by the clerk of the district court; Donna acted in good faith (indeed, all heirs acted in good faith); and there was a reasonable basis as to why Donna did not comply with the time restrictions; i.e., she was prevented from doing so by the clerk of the court who failed in exercising the responsibilities imposed by the Legislature and by this court.

Furthermore, the will was located and the petition was filed less than six months after the statutory time restrictions had run and while intestacy proceedings were still pending in the district court. The prejudice to Karen resulting from enlarging the time limitation is small; whereas the injustice to Donna would be great, all because the clerk of the district court failed to remember or to follow the clear edict of the Legislature and this court. Furthermore, allowing the clerk's mistake to preclude probating the will would defeat the intentions of Oroke, who relied on the law and did everything that the law asked of him, and whose intentions the law seeks to uphold. See *Strader*, 301 Kan. at 59 (clear legislative intent to probate wills, not to suppress or withhold them from probate); *In re Estate of Graves*, 203 Kan. 762, 776, 457 P.2d 71 (1969) (Schroeder, J., dissenting) (effectuating intention of testator is primary function of courts).

13

Application of equitable principles in this case is also consistent with the analysis undertaken by other jurisdictions.

In *Muldrew v. Dodson*, 237 Ark. 852, 376 S.W.2d 672 (1964), the court excused the failure to probate a will within the statute of limitations. The testator died in 1947, whereupon his will was properly filed in the office of the probate clerk, but for some reason no order admitting the instrument to probate was ever entered, a duty that was statutorily incumbent on the clerk. The case lay dormant until 1963, when the guardian and next friend of the only surviving principal beneficiary under the will filed a petition for its probate. The court concluded: "It would be unjust to apply the [statutory] limitation in this instance, not only because a public officer was at fault in the matter but also because, in a doubtful situation, we prefer to give effect to the testator's intention by upholding the will." 237 Ark. at 853.

In *In re Smith,* 144 Me. 235, 67 A.2d 529 (1949), the testatrix died in 1925, survived by her widower and son. When her husband died in 1934, the son made a thorough search for his mother's will but could not find it. The son then employed an attorney, who inquired at the probate office. While the register of probate could find nothing at first, a second search among the inactive files revealed the will, which had not been indexed or docketed. The Maine Supreme Judicial Court held that, in reversing the judgment dismissing the son's petition for probate, the will had been lost by the probate office, which had the duty to care for the records in its possession. 144 Me. at 238. Because the will was in the place where it should have been and the petitioner had done all that the law asked of him, the will was eligible for probate even though the statutory period had run. 144 Me. at 238; see also *Wood v. Wood*, 251 Ky. 710, 65 S.W.2d 969 (1933) (former clerk testified he had received and filed original will, suggesting next clerk was negligent in not locating it; new trial was justified); *In re Lane's Will*, 32 Ky. (2

14

Dana) 106 (1834) (will filed with county clerk was lost, court held:  "Accidents ought not to destroy the rights of parties. It does not appear to be the fault of the executors, or of the clerk, that the original is not produced . . . ."); *McNeely v. Pearson*, 42 S.W. 165 (Tenn. Ct. Chancery App. 1896) (county clerk negligently failed to transcribe full will that had been given to his custody; appellate court applied equity to protect original intent of testator).

K.S.A. 59-621 provides that a person having custody of a will "shall deliver it to the court which has jurisdiction thereof." The statute requires that "[e]very person who willfully neglects or refuses to deliver a will after being duly ordered to do so shall be guilty of contempt of court." K.S.A. 59-621. Here, the will was delivered to the court, but the court erroneously informed the heirs that it did not have possession of the will. Obviously, the court could not find itself in contempt. Generally, when an effort is undertaken to correct a mistake (in this case, a mistake by a judicial employee), limitation statutes do not begin to run on actions until the mistake is discovered or when, by use of due diligence, it should have been discovered. See *Klepper v. Stover*, 193 Kan. 219, 221-22, 392 P.2d 957 (1964).

The unique circumstances doctrine is one this court uses sparingly. However, neither the Legislature in repealing K.S.A. 59-620, nor this court in enacting Supreme Court Rule 108(e)(4)(A), intended that an error by a judicial employee should be inconsequential as to the statute of limitations. Equitably tolling the statute of limitations provides a realistic and fair remedy for an unusual situation not contemplated by the statutory scheme. To be clear, this is not a modification of *Strader*, but a holding limited to the unique and rare circumstances in this case of a clerk of the district court not following a duty imposed by law.

IS DONNA FAIRBANKS ENTITLED TO APPELLATE ATTORNEY FEES?

*Standard of Review*

"The question of whether a court has the authority to award attorney fees is a question of law over which an appellate court has unlimited review." *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013).

*Analysis*

Twelve days after oral argument before this court, Donna filed a motion for attorney fees for services performed by her attorneys in the Court of Appeals and the Supreme Court in the amount of $4,018.50, plus $49.65 in expenses. Karen filed no response. Kansas Supreme Court Rule 7.07(b)(1) and (2) (2019 Kan. S. Ct. R. 50) sets forth three requirements this court must consider when attorney fees are sought on appeal.

First, this court may award attorney fees for services on appeal if the district court had authority to award attorney fees. Supreme Court Rule 7.07(b)(1). Donna cites K.S.A. 59-1504 as the district court's authority to award fees. That statute provides in pertinent part:

> "Whenever any person named in a will or codicil . . . prosecutes any proceedings in good faith and with just cause, for the purpose of having it admitted to probate, whether successful or not, . . . such person shall be allowed out of the estate his or her necessary expenses . . . together with such compensation for . . . services . . . of his or her attorneys as shall be just and proper." K.S.A. 59-1504.

We agree that Donna's attempts to have the appellate courts uphold the district court's admission of the will to probate provides this court with authority to entertain Donna's motion for attorney fees.

Second, "[a] motion for attorney fees on appeal must be made under Rule 5.01 [2019 Kan. S. Ct. R. 30] and be filed no later than 14 days after oral argument" or 14 days after "the day argument is waived or the date of the letter assigning the case to a non-argument calendar, whichever is later." Supreme Court Rule 7.07(b)(2) (2019 Kan. S. Ct. R. 51). No motion was filed for attorney fees while the case was pending before the Court of Appeals. The only motion seeking fees and expenses for the entire appellate process was filed on November 5, 2018, 12 days after oral arguments were heard by this court on October 24, 2018.

Although this motion was timely filed for this court to consider the appellate services rendered before the Kansas Supreme Court, it was not timely filed for us to consider the fees for services while the appeal was pending in the Court of Appeals. "If a party would be entitled to appellate attorney fees under a statute or contract upon prevailing on appeal, the party must timely file a Supreme Court Rule 7.07(b) . . . motion in order to preserve the right to those fees." *Snider*, 297 Kan. 157, Syl. ¶ 4. As the *Snider* court aptly concluded, "[O]nly the Court of Appeals could consider the reasonableness of the appellate fees related to the proceedings before the Court of Appeals." 297 Kan. at 168.

Finally, Supreme Court Rule 7.07(b)(2) (2019 Kan. S. Ct. R. 51) requires a movant to attach an affidavit to the motion for attorney fees specifying: "(A) the nature and extent of the services rendered; (B) the time expended on the appeal; and (C) the factors considered in determining the reasonableness of the fee," which are set forth in

17

Kansas Rule of Professional Conduct 1.5 (2019 Kan. S. Ct. R. 300). We hold the attorney affidavit attached to the motion complies with these requirements.

Nevertheless, we can only consider the request for appellate legal services performed after March 31, 2017, the date the Court of Appeals filed its opinion and the date Donna could begin preparing her petition for review. According to our calculations, the requested fee must be reduced by $1,247.25 for appellate services while the case was in the Court of Appeals. We now must consider if the remaining fee of $2,759.50 for services rendered while the appeal was in this court is reasonable by applying the factors set forth in KRPC 1.5(a) (2019 Kan. S. Ct. R. 300):

"(1)     the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2)     the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3)     the fee customarily charged in the locality for similar legal services;

"(4)     the amount involved and the results obtained;

"(5)     the time limitations imposed by the client or by the circumstances;

"(6)     the nature and length of the professional relationship with the client;

"(7)     the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8)     whether the fee is fixed or contingent."

In applying these factors, no one factor creates a presumption that controls unless and until it is rebutted by one or more of the other factors. *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 951, 135 P.3d 1127 (2006). Because there is no lower court determination for us to review, we may make our own determination of what reasonable fee, if any, to award. See *Johnson*, 281 Kan. at 959 ("Appellate courts are experts on the reasonableness of attorney fees."). Based on our careful review of the attorney's affidavit and knowing the novel legal issue and work involved in this appeal, we find the requested

18

attorney fees to be reasonable. Therefore, we award attorney fees in the amount of $2,759.50 to be paid from the estate.

The decision of the Court of Appeals is reversed. The decision of the district court is affirmed, and the case is remanded for further proceedings conforming with this opinion.

LUCKERT, J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 116,333 vice Justice Luckert under the authority vested in the Supreme Court by K.S.A. 20-2616.